

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-24-2001

# Eaves v. Cape May County

Precedential or Non-Precedential:

Docket 00-5096

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Eaves v. Cape May County" (2001). *2001 Decisions.* Paper 11.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/11

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 24, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 00-5096

PAMELA D. EAVES

v.

COUNTY OF CAPE MAY;
WILLIAM E. STURM, INDIVIDUALLY
AND AS AN ELECTED MEMBER AND
DIRECTOR OF THE BOARD OF CHOSEN
FREEHOLDERS OF CAPE MAY COUNTY, NEW JERSEY;
EDMUND GRANT, INDIVIDUALLY AND AS THE
TREASURER OF THE COUNTY OF CAPE MAY;
BOARD OF CHOSEN FREEHOLDERS OF
CAPE MAY COUNTY;
JOHN DOES, I TO X; (fictitious names of
persons or organizations more fully
described herein); jointly severally
and in the alternative

County of Cape May,
        Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 95-cv-04574)
District Judge: Honorable Jerome B. Simandle

Argued September 12, 2000

Before: McKEE, RENDELL,
and STAPLETON, Circuit Judges

(Filed: January 24, 2001)

William M. Tambussi [ARGUED]
Brown & Connery
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108
Counsel for Appellee
Pamela D. Eaves

Marc I. Bressman [ARGUED]
Budd, Larner, Gross,
 Rosenbaum, Greenberg & Sade
200 Lake Drive East
Woodland Falls Corporate Park
Suite 100
Cherry Hill, NJ 08002
Counsel for Appellant
County of Cape May

OPINION OF THE COURT

RENDELL, Circuit Judge.

I. INTRODUCTION

The County of Cape May ("the County") appeals the District Court's ruling awarding the plaintif f, Pamela Eaves ("Eaves"), post-judgment interest on the Court's award of $254,248.57 in attorney's fees and expenses fr om August 11, 1998, the date that the District Court first stated that she was entitled to such an award "in an amount to be determined pursuant to Fed. R. Civ. P. 54(d)." The legal issue presented in this employment discrimination action is whether post-judgment interest on a judgment awarding attorney's fees and expenses pursuant to 42 U.S.C. S 2000e-5(k) runs from the date that the District Court rules initially that the plaintiff is entitled to attorney's fees, or alternatively, from the date that the District Court actually quantifies the amount awarded, wher e those determinations are made at separate times.

Based upon our construction of the applicable federal post-judgment interest statute, 28 U.S.C. S 1961(a), we hold

2

that post-judgment interest on an attor ney's fee award runs from the date that the District Court actually quantifies the award. Accordingly, we will vacate the District Court's January 27, 2000 order insofar as it awar ded post-judgment interest from August 11, 1998, and will remand the matter to the District Court for the entry of an appropriate order. However, because we find no merit in the County's other challenges relating to certain rulings made in the Court's January 27, 2000 order, we will affirm those rulings without further discussion.1

II. FACTS and PROCEEDINGS

Eaves is an American citizen of Chinese national origin. She was employed as the Treasurer of Cape May County, but was demoted to County Comptroller on July 8, 1994. After Eaves filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") based on her demotion and an alleged hostile work envir onment, the County eliminated her County Comptroller position.

Eaves then filed a Complaint in the District Court on August 30, 1995, alleging that the County, its Boar d of Freeholders, William E. Sturm and Edmund Grant violated the Age Discrimination in Employment Act, 29 U.S.C. SS 621-634 (1998) ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. SS 2000e to e-17 (1998) ("Title VII"), and the New Jersey Law Against Discrimination, N.J. Stat. Ann. S 10:5-1 to -42 (West 1993) ("NJLAD"). On May 1, 1998, a jury found in Eaves's favor on the Title VII and NJLAD retaliation claim against the County, but found for the defendants on the remaining claims.2  On May 11, 1998, Eaves filed post-trial motions seeking prejudgment interest

_____

1. In this appeal, the County also challenged the District Court's rulings with respect to the (1) 25 percent downwar d adjustment of the lodestar amount given plaintiff 's limited success; and (2) 15 percent contingency enhancement applied pursuant to the New Jersey Law Against Discrimination.

2. The jury deliberated only on Eaves's T itle VII and NJLAD claims based on the demotion, hostile work environment and r etaliation, because the Court dismissed the additional claims initially pleaded in the Complaint on defendants' motions for summary judgment and for a directed verdict.

pursuant to Title VII, and attorney's fees under Title VII and the NJLAD. On August 11, 1998, the District Court entered judgment on the jury verdict in favor of Eaves, and against the County, for $90,000, together with pr ejudgment interest in the amount of $12,602.46, "together with attorney's fees and costs in an amount to be determined pursuant to Rule 54(d), Fed. R. Civ. P." App. at 5. The order accompanying the judgment stated that "attor ney's fees and costs shall be awarded in an amount to be deter mined by the court upon plaintiff 's presently pending motion." App. at 8.

On January 27, 2000, the District Court resolved the outstanding motion for attorney's fees.3 After reviewing Eaves's counsels' billing records, the Court calculated the lodestar, reduced it by 25 percent to account for Eaves's limited success, applied a contingency enhancement of 15 percent under the NJLAD, and quantified the attorney's fee award. Ultimately, the Court awarded plaintiff 's counsel $254,248.57 in fees and expenses. It also addr essed the question of post-judgment interest on the awar d. We recount the Court's analysis on this point:

> In the Judgment entered on August 11, 1998, the Court entered "judgment in favor of the plaintiff and against the defendant, County of Cape May, in the amount of $90,000.00 together with attorney's fees and costs in an amount to be determined pursuant to Rule 54(d), Fed. R. Civ. P." The amount of fees and related expenses has, more than 16 months later , been

_____

3. The motion actually sought attorney's fees, "expenses," and "costs of suit." The District Court described the "expenses" as including "deposition transcript fees, expert witness fees, medical reports, investigation fees, photocopying, and binding." Items designated as "costs" were those permitted under 28 U.S.C. S 1920, including the filing fee, trial transcript fees and witness fees. See App. at 10-11. Ultimately, the Court allowed post-judgment interest on the combined amount of attorney's fees and expenses, but not costs. Throughout this opinion, we will treat the attorney's fees and expenses aspect of the Court's order as a single attorney's fee award, as it is clear that the Court awarded those amounts designated as "expenses" as part of the "reasonable attorney's fee" allowable under 42 U.S.C. S 2000e-5(k). See Abrams v. Lightolier Inc., 50 F.3d 1204, 1225-26 (3d Cir. 1995).

determined. Since the attorney's fees were determined as of the judgment date (August 11, 1998), the plaintiff is also entitled to recover interest upon that sum since that date, as post-judgment interest accounting for delay in payment. It was the Court's intent, in entering the Judgment on August 11, 1998, that the plaintif f was found to be entitled to recover her attor ney's fees, with only the amount to be determined. The accompanying Order will therefore amend the August 11, 1998, Judgment to insert this amount, together with post-judgment interest from August 11, 1998. This adjustment further recognizes that plaintiff and her counsel have been deprived of the benefit of the payment of this sum since it was due and that the fee award is calculated upon plaintiff 's counsel's 1998 billing rates rather than current rates.

App. at 56. On the same date, the Court enter ed the "Amended Judgment" which incorporated its quantification of the attorney's fee award, and its statement that post-judgment interest on the jury verdict and the fee award was to run from August 11, 1998. App. at 58. The County filed a timely notice of appeal.4

III. DISCUSSION

The County argues that the District Court err ed in "backdating" the post-judgment interest award on the fee amount to August 11, 1998, the date the Court or dered that attorney's fees and costs would be awar ded "in an amount to be determined" by the Court. It contends that the Court's decision to award post-judgment interest from that date ignores the fact that the amount of the award was not quantified until nearly a year and a half later, and unfairly penalizes the County because the delay was apparently caused by court backlog rather than dilatory

_____

4. The District Court exercised subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. S 1331, 1343, and over the state law claims pursuant to 28 U.S.C. S 1367. W e have appellate jurisdiction pursuant to 28 U.S.C. S 1291, and exer cise plenary review over the challenged ruling. Loughman v. Consol-Pennsylvania Coal Co., 6 F.3d 88, 97 (3d Cir. 1993) .

tactics on the County's part. The County cites Foley v. City of Lowell, 948 F.2d 10, 21-23 (1st Cir . 1991), and MidAmerica Federal Savings & Loan Ass'n v. Shearson/American Express, Inc., 962 F .2d 1470, 1475 (10th Cir. 1992), in support of its position, claiming that both decisions held that post-judgment inter est on an attorney's fee award accrues from the date the amount of the award is quantified. It further asserts that the Supreme Court's decision in Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827 (1990), is consistent with the reasoning in Foley and MidAmerica . Appellant's Br. at 15-16.

Eaves responds that "the majority rule among the circuit courts of appeals is that post-judgment `inter est accrues from the date that the party becomes unconditionally entitled to fees, even if those fees are not yet quantified.' " Appellee's Br. at 21 (citing Jenkins v. Missouri, 931 F.2d 1273, 1275 (8th Cir. 1991); Mathis v. Spears, 857 F.2d 749, 760 (Fed. Cir. 1988); Copper Liquor , Inc. v. Adolph Coors Co., 701 F.2d 542, 545 (5th Cir. 1983) (en banc) (per curiam), overruled in part on other grounds by Int'l Woodworkers of Am. v. Champion Int'l Corp.  790 F.2d 1174 (5th Cir. 1986), aff 'd sub nom. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987)). In other words, according to Eaves, post-judgment inter est accrues on an attorney's fee award "from the date establishing the right to the award, not the date of the judgment establishing its quantum." Appellee's Br. at 21-22 (citing Mathis, 857 F.2d at 760). The justification for commencing the post-judgment interest period from the earlier of two judgments is grounded in equitable considerations:

> "[Postponing the accrual of post-judgment inter est]
> would effectively reduce the judgment for attorney's
> fees and costs, because a certain sum of money paid at
> a certain time in the future is worth less than the same
> sum of money paid today. Failing to allow awar ds of
> attorney's fees to bear interest would give parties
> against whom such awards have been enter ed an
> artificial and undesirable incentive to appeal or
> otherwise delay payment."

Appellee's Br. at 22 (quoting Jenkins, 931 F.2d at 1276). Eaves claims that these same policy considerations should guide us in determining the date from which post-judgment interest should run in this case because the end result-- the delay in receipt of funds rightfully due to her counsel-- is the same, regardless of whether the delay was caused by the District Court or a litigious defendant.5

Preliminarily, we point out that the County does not dispute that post-judgment interest under 28 U.S.C. S 1961(a) accrues on a judgment awarding attorney's fees to a prevailing party such as Eaves just as it would any other "money judgment" to which S 1961(a) applies. R.W.T. v. Dalton, 712 F.2d 1225, 1234-35 (8th Cir . 1983), abrogated on other grounds by Kaiser Aluminum, 494 U.S. at 834-35; Spain v. Mountanos, 690 F.2d 742, 748 (9th Cir. 1982); see Institutionalized Juveniles v. Sec'y of Pub. W elfare, 758 F.2d 897, 927 (3d Cir. 1985) (allowing post-judgment interest to accrue on attorney's fee award; analysis proceeded on premise that post-judgment interest on an attorney's fee award was available); Devex Corp. v. Gen. Motors Corp., 749 F.2d 1020, 1026-27 (3d Cir. 1984) (affirming district court's holding that post-judgment interest statute applies to award of costs). Thus, our inquiry is dir ected only to the date from which post-judgment interest should run where there ostensibly are two "judgments" pertaining to an attorney's fee award.

While we have interpreted and applied the federal post-judgment interest statute on several occasions, 6 we have

_____

5. We note that the circumstances of this case are unusual in that the delay between the District Court's first and second orders spanned approximately seventeen months. Moreover , it is not disputed that the County did not attempt to delay the Court's quantification of the amount due, but instead asked the Court several times to enter a final judgment on Eaves's attorney's fee petition several times throughout the seventeen-month period.

6. See, e.g., Christian v. Joseph, 15 F.3d 296, 298-99 (3d Cir. 1994) (finding that Virgin Islands post-judgment interest statute and 28 U.S.C. S 1961(a) were analogous and stating that, like S 1961(a), Virgin Islands statute provides for automatic accrual of post-judgment interest); Dunn v. Hovic, 13 F.3d 58, 60-62 (3d Cir . 1993) (allowing post-judgment

not yet confronted the precise question before us in this case. And, as is evident from the discussion that follows, there is no consensus among the Courts of Appeals that have addressed the issue. Eaves correctly states that the "majority view," which has been adopted by the Courts of Appeals for the Fifth, Eighth, Ninth, Eleventh and Federal Circuits, is that post-judgment interest on an attorney's fee award runs from the date that the district court enters a judgment finding that the prevailing party is entitled to such an award, or from the date that, by operation of law, the prevailing plaintiff becomes entitled to fees, even if the amount of the award is not fixed in that judgment. Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 332

_____

interest to accrue from date of district court's entry of judgment on jury verdict despite partial remittitur in district court and further remittitur
of punitive damage award on appeal); Loughman, 6 F.3d at 97-100 (finding that plaintiffs were entitled to post-judgment interest accruing from date of original judgment rather than fr om date of judgment entered after damages retrial or fr om date of mandate issued after first appeal); In re Lower Lake Erie Iron Ore Antitrust Litig., 998 F.2d 1144, 1177-78 (3d Cir. 1993) (stating that S 1961 does not mandate that judgment from which interest is calculated be final judgment); Bonjorno v. Kaiser Aluminum & Chem. Corp., 865 F.2d 566, 571-72 (3d Cir. 1989) (holding that post-judgment interest on damages award began to run as of date of second jury verdict on damages, which was then vacated and subsequently reinstated, rather than as of date that jury either delivered first liability verdict or first damages verdict, or date on which Court of
Appeals issued mandate), aff 'd in part, rev'd in part, Kaiser Aluminum, 494 U.S. at 827; Poleto v. Consol. Rail Corp. , 826 F.2d 1270, 1280-81 (3d Cir. 1987) (holding that post-judgment inter est on jury verdict began to run from date of verdict rather than district court's entry of judgment), abrogated by Kaiser Aluminum, 494 U.S. at 827; Brock v. Richardson, 812 F.2d 121, 125-26 (3d Cir. 1987) (holding that back pay award under Fair Labor Standards Act should be presumed to carry post-judgment interest, unless equities in particular case r equire otherwise); Institutionalized Juveniles, 758 F.2d at 927 (allowing post-judgment interest to run from date that district court ruled that plaintiffs were entitled to fees and awarded quantified amount of fees where court of appeals affirmed award in part and vacated it in part for recalculation); Devex Corp., 749 F.2d at 1026 (holding that district court did not abuse its discretion in awarding post-judgment interest on award of taxable costs).

& n.24 (5th Cir. 1995); Friend v. Kolodzieczak, 72 F.3d 1386, 1391–92 (9th Cir. 1995); BankAtlantic Inc. v. Blythe Eastman Paine Webber, 12 F.3d 1045, 1052–53 (11th Cir. 1994); Jenkins, 931 F.2d at 1277; Fox Indus. Inc. v. Structural Pres. Sys. Inc., 922 F.2d 801, 804 (Fed. Cir. 1991); Mathis, 857 F.2d at 760; Copper Liquor, 701 F.2d at 545. In reaching their result, the leading cases have relied principally upon the policy underlying the post-judgment interest statute: compensation of the plaintif f (and the attorney) for the loss of the use of the money. By contrast, the "minority view," adopted by the Courts of Appeals for the Seventh and Tenth Circuits, is that, where the district court enters an order stating that the pr evailing party is entitled to a fee award but does not quantify the amount of the award until a later date, post-judgment interest does not begin to accrue until the Court fixes the amount of the award.7 MidAmerica, 962 F.2d at 1476 (adopting rule that post-judgment interest begins to accrue when court enters judgment setting amount of fees owed based upon reasoning in Kaiser Aluminum); Fleming v. County of Kane, 898 F.2d 553, 565 (7th Cir. 1990) (awarding interest from date amount was fixed, stating that "prior to the date the judgment on attorney's fees was entered, plaintiff 's attorney's claim for unpaid attorney's fees was unliquidated and, as such, not entitled to interest"). 8 We do not find the

---

7. While the County also cites the First Cir cuit's decision in Foley as having adopted the "minority view," the court expressly declined to reach the issue presented here. Foley, 948 F.2d at 22 n.16 ("We do not undertake to decide here whether postjudgment interest begins to accrue from the date a judgment expressly and unconditionally establishing a party's right to attorneys' fees is enter ed or from the date of a judgment
that establishes the quantum of such fees (in a case where those dates differ).").

8. Although the Seventh Circuit in Fleming allowed post-judgment interest to accrue from the date of the district court's quantification of the attorney's fee award rather than the date that the court ruled that the prevailing party was entitled to fees, its analysis is not all that helpful because it is not clear whether the court directly considered the issue presented in the instant case. The district court in Fleming entered an order in April 1988 stating that the plaintiff was entitled to attorney's
fees, and also allowing, among other things, an adjustment to the billing rate in the form of "adding interest from a date 30 days after the end of

9

reasoning of the courts adopting the "majority view" persuasive, because they ignore a textual analysis of S 1961(a) and, instead, base their result on policies they find to underlie post-judgment interest and attorney's fee awards. In our view, the correct answer is dictated by the text of S 1961(a) and by our case law construing the meaning of the term "money judgment," a common legal term which we believe is critical to the outcome of this appeal.

Because "[t]he starting point for interpretation of [S 1961(a)] is the language itself," Kaiser Aluminum, 494 U.S. at 835, our analysis begins with the text of the statute, which provides in pertinent part that

> [i]nterest shall be allowed on any money judgment in a
> civil case recovered in a district court. Execution

_____

the month in which the services were rendered." Fleming, 898 F.2d at 563 (emphasis added). The court subsequently entered an order quantifying the fees on June 24, 1988.

On appeal, the court found that the district court erred in awarding interest from a date 30 days after the end of the month in which the services were rendered, reasoning that "[p]rior to the date the judgment on attorney's fees was entered, plaintiff's attorney's claim for unpaid attorney's fees was unliquidated and, as such, not entitled to interest." Id. at 565. The court stated that because the record "clearly indicated" that the award of attorney's fees was entered on June 24, 1988, post-judgment interest ran from that date.

Fleming does not provide much guidance because it is not clear from the opinion whether the plaintiff argued that post-judgment interest should have been calculated from the April 1988 date on which the court first determined that the plaintiff was entitled to attorney's fees. Moreover, although the court of appeals mentioned the fact that until the "judgment" on attorney's fees is entered, the claim for unpaid fees is "unliquidated," it seems that it made that observation in the context of rejecting the district court's allowance of interest from 30 days after the services were performed rather than from the entry of the "judgment" on attorney's fees. The court of appeals simply did not consider the subsidiary issue of which "judgment" that might be. At bottom, we do not rely on Fleming because, while the court reached a result consistent with our interpretation of S 1961(a) as applied in the attorney's fee context, it provided little substantive analysis and did not rely on the language of the statute to reach that result.

10

therefor may be levied by the marshal, in any case
where, by the law of the State in which such court is
held, execution may be levied for interest on judgments
recovered in the courts of the State. Such interest shall
be calculated from the date of the entry of the
judgment. . . .

28 U.S.C. S 1961(a) (emphasis added). "Section 1961(a)
dictates that interest be awarded." Dunn v. Hovic, 13 F.3d
58, 60 (3d Cir. 1993). Given the plain language and
structure of the statute, it is clear that"the judgment"
referred to in the third quoted sentence is the "money
judgment" specified in the first. Thus, by its terms, post-
judgment interest does not begin to run underS 1961(a)
until the district court enters the judgment at issue, i.e.,
the "money judgment."9

This observation is not dispositive, because the pr oblem
in this case is that we arguably have two"judgments," i.e.,
(1) the August 11, 1998 order which stated that Eaves was
entitled to an attorney's fee award, and (2) the January 27,
2000 order which quantifies the amount of the award.
Thus, the pivotal question is whether the August 11, 1998
order qualifies as a "money judgment" such that its entry
by the clerk of the District Court commences the period
from which post-judgment interest begins to run.

Section 1961 does not define the term "money judgment."
Nevertheless, if a statute uses a legal term of art, we must
_____

9. Although neither party has suggested it, we note that it could be
argued, at least in theory, that the statute is ambiguous as to whether
the "judgment" which triggers the post-judgment interest period has to
have the characteristics of a "money judgment"--the term found in the
first sentence of S 1961(a). However, the structure of S 1961(a) ties the
"judgment" referred to in the thir d sentence back to the "money
judgment . . . recovered in the district court," which, of course,
provides
the legal basis for the award of post-judgment interest under the statute.
Thus in our view, the statute cannot be viewed as ambiguous on this
point. See Smith v. Fid. Consumer Disc. Co., 898 F.2d 907, 910 (3d Cir.
1990) ("[S]tatutory construction should halt at such time as the court
determines the text at issue to be plain and unambiguous") (citing Rubin
v. United States, 449 U.S. 424, 430 (1981)); see also In re Cohen, 106
F.3d 52, 57 (3d Cir. 1997) (rejecting construction of statute that, in its
view, "strain[ed] the structure of the statute as a whole").

11

"presume Congress intended to adopt the term's ordinary legal meaning." Omnipoint Corp. v. Zoning Hearing Bd., 181 F.3d 403, 407 (3d Cir. 1999) (citing McDermott Intern. Inc. v. Wilander, 498 U.S. 337, 342 (1991)); see also Zubi v. AT&T Corp., 219 F.3d 220, 227 (3d Cir. 2000) (Alito, J., dissenting) (citing, inter alia, Omnipoint, 181 F.3d at 407, and Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 537 (1947) ("[I]f a word is obviously transported from another legal sour ce, whether the common law or other legislation, it brings its soil with it.")). In Penn Terra Limited v. Department of Environmental Resources, 733 F.2d 267 (3d Cir . 1984), we addressed the meaning of the term "money judgment" in the context of construing the phrase "enforcement of a money judgment" found in 11 U.S.C. S 362(b)(5) of the Bankruptcy Code. Recognizing that Congress failed to provide any guidance as to the meaning to be afforded to the phrase "enforcement of a money judgment" as it was used in that pr ovision, we looked to the established meaning of the ter ms. Id. at 274– 75 ("Its meaning must therefore be gleaned from the commonly accepted usage and from whatever indications of congressional intent we find persuasive."). We defined "money judgment" in that context in the following manner:

> In common understanding, a money judgment is an order entered by the court or by the clerk, after a verdict has been rendered for [the] plaintiff, which adjudges that the defendant shall pay a sum of money to the plaintiff. Essentially, it need consist of only two elements: (1) an identification of the parties for and against whom judgment is being entered; and (2) a definite and certain designation of the amount which plaintiff is owed by defendant.

Id. at 275 (citing generally 49 C.J.S. Judgments SS 71–82, which "describ[ed] proper form of money judgments") (emphasis added).

Since Penn Terra, our resear ch reveals that other courts have taken a similar approach in determining whether a particular judgment constituted a "money judgment," and, in various legal contexts have looked to whether the judgment at issue required a party to pay a fixed sum. See, e.g., EEOC v. Gurnee Inns, Inc., 956 F.2d 146, 149 (7th Cir.

12

1992) (where district court entered judgment that awarded plaintiffs backpay in definite amounts, less applicable payroll deductions, and directed employer to deduct payroll taxes and deliver checks to plaintiffs, court rejected employer's argument that court's judgment was not "money judgment" under S 1961(a), stating that"the awards did not lose their character as sums certain simply because they were subject to the mechanical task of computing payroll deductions"); In re Commonwealth Oil Ref. Co., 805 F.2d 1175, 1186 (5th Cir. 1986) (following Penn Terra's definition of "money judgment"); In re V alencia, 213 B.R. 594, 596 (D. Colo. 1997) (affirming bankruptcy court's entry of money judgment fixing amount of damages debtor owed in dischargeability proceeding and noting that bankruptcy court's equitable jurisdiction allowed it to "r ender a money judgment in an amount certain"); In r e Dow Corning Corp., 237 B.R. 380, 386 (Bankr. E.D. Mich. 1999) (in determining whether order pursuant to S 502(b) of Bankruptcy Code constituted "money judgment" from which post-judgment interest would run, court stated "[a]s one might expect, a `money judgment' consists of three elements: it must be a judgment; entitling the plaintiff to a specified sum of money; and such entitlement must be against an identifiable party"); In re Devitt , 126 B.R. 212, 215 (Bankr. D. Md. 1991) (holding that bankruptcy court had jurisdiction to enter "money judgment," i.e., "judgment in an amount certain," in dischargeability pr oceeding).

We further note that, although not cited by the parties, we find the Court of Appeals for the Eighth Cir cuit's opinion in Happy Chef Systems, Inc. v. John Hancock Mutual Life Insurance Co., 933 F.2d 1433 (8th Cir. 1991), instructive on this issue. There, as her e, the parties disputed which of two "judgments" commenced the post-judgment interest period applicable under S 1961(a). In Happy Chef Systems, the landlord sought a declaration that the tenant breached its lease with the landlord, and was obligated to perform its lease obligations. After the district court determined that the landlor d was entitled to a judgment requiring the tenant to perfor m its lease obligations, the landlord filed a motion seeking "supplemental relief " under 28 U.S.C.S 2202 in the form of money damages. On February 21, 1990, the district court

13

entered a judgment and order that the tenant was obligated to perform its lease obligations. It also granted the landlord's motion for supplemental relief, but did not quantify the amount of damages because it believed that the trial record was not adequate to enter a judgment on the amount to be awarded. Subsequently, on May 25, 1990, the district court entered an order which quantified the landlord's damage award, and awarded post-judgment interest from February 21, 1990--the date on which the court first determined that the landlor d was entitled to supplemental relief under S 2202. Id. at 1435.

On appeal, the Court of Appeals for the Eighth Cir cuit reversed the award of post-judgment inter est from February 21, 1990. The court held that the district court err ed in awarding post-judgment interest fr om the date that it first determined that the landlord was entitled to damages under S 2202. It stated that "[s]ection 1961(a) does not provide for interest until a money judgment has been entered. Therefore, interest at the post-judgment interest rate should begin on May 25, 1990 [the date the amount was quantified], not February 21 of that year ." Id. at 1437.

The court's conclusion in Happy Chef Systems supports our construction of the phrase "any money judgment" in S 1961(a), which requires that the judgment at issue award a fixed amount of fees to the prevailing party in order to trigger the post-judgment interest period. Rather than finding that the post-judgment interest period commences from the date that the district court deter mined in a general sense that the landlord was entitled to a damages award, the court in Happy Chef Systems stated that S 1961(a) requires the entry of a money judgment, which, as we explained in Penn Terra, is commonly understood to require an award of a fixed sum to the prevailing party. Cf. In re Burlington N., Inc. Employment Pract. Litig., 810 F.2d 601, 609 (7th Cir. 1986) (rejecting ar gument that plaintiffs were entitled to post-judgment interest fr om date district court approved consent decree setting forth plaintiffs' right to recover reasonable attorney's fee, stating that S 1961(a) only authorized interest from date of entry of judgment). And because we read the reference to the "entry of the judgment" in the third sentence of S 1961(a) as referring

14

back to the "money judgment" specified in the first sentence of S 1961(a), it necessarily follows that post-judgment interest begins to run on a judgment awarding attorney's fees where that judgment fixes the amount owed to the prevailing party.

We recognize that in Penn Terra, we did not define the term "money judgment" in the context of a dispute surrounding the meaning of the term as it is used in 28 U.S.C. S 1961(a). Rather, we wer e interpreting the scope of 11 U.S.C. S 362(b)(5). Nevertheless, given that our construction of "money judgment" was based on the common legal meaning ascribed to that term, our definition in Penn Terra certainly is instructive in ascertaining what Congress intended in using the same phrase inS 1961(a). Here, as in Penn Terra, Congr ess has not provided any definition for the term as it is used inS 1961(a), thus requiring us to look to the established meaning of that term. Omnipoint, 181 F.3d at 407 (where statute uses legal terms of art, we must "presume Congr ess intended to adopt the term's ordinary legal meaning"); Penn Terra, 733 F.2d at 275 ("Where Congress uses terms that have accumulated settled meaning under either equity or common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.").

Thus, we are constrained to agree with the County that S 1961(a) simply does not permit post-judgment interest on an attorney's fee award to run fr om the date that the court initially determines that the prevailing party is entitled to an award if the amount was not also quantified and included in that judgment. It necessarily follows that the "money judgment" in this case was not enter ed until January 27, 2000--the date on which the court quantified the amount of the attorney's fees and awar ded plaintiff a fixed sum. Put differently, the August 11, 1998 judgment stating that Eaves was entitled to an award of attorney's fees could not have been the judgment triggering the post-judgment interest period because the Court's statement that Eaves was entitled to such an award cannot be considered the functional equivalent of a judicial finding that the County was liable to Eaves to pay a fixed sum of attorney's fees.

15

In reaching this conclusion, we have not overlooked the fact that we stated in Penn Terra that the phrase "money judgment" commonly refers to a judgment entered upon a jury verdict, while our analysis in this case imports that definition into a situation where the "judgment" at issue actually resolved a motion for attorney's fees, an ancillary issue to the underlying dispute between the parties. We are not troubled by this distinction, however , because it is not disputed that a judgment awarding attor ney's fees theoretically could qualify as a "money judgment" on which post-judgment interest could be awarded under S 1961(a), provided that it has the requisite attributes of a "money judgment." Given that we treat judgments awarding attorney's fees as we would any other "money judgment," we see no principled basis for according a dif ferent meaning to the term simply because the award at issue here involves attorney's fees rather than money damages stemming from a jury verdict. For our purposes, the essential aspect of our construction of the term "money judgment" in Penn Terra is that it must be comprised of "a definite and certain designation of the amount which plaintiff is owed by defendant." Thus, it makes no differ ence that the actual judgment at issue stemmed from a fee petition rather than a jury verdict.

We further observe that our construction of the phrase "any money judgment" in S 1961(a) is consistent with the Supreme Court's analysis in Kaiser Aluminum . There the plaintiff, Bonjorno, initially secur ed a liability verdict against the defendant, Kaiser Aluminum, on August 16, 1979. The jury then assessed damages against Kaiser Aluminum on August 21, 1979, and the district court entered judgment on the verdict on August 22, 1979. Ultimately, the district court concluded that the evidence did not support the damage award and granted Kaiser Aluminum's motion for a new trial as to damages only. On December 2, 1981, the jury found in favor of Bonjor no, and awarded damages. The district court enter ed a judgment on the second jury verdict on December 4, 1981. Kaiser Aluminum, 494 U.S. at 830-31.

Shortly thereafter, the district court granted Kaiser Aluminum's motion for a judgment notwithstanding the

16

verdict as to a portion of the second damages verdict. However, on appeal, we reversed the court's determination on that point and reinstated the December 4, 1981 judgment on the second verdict. On remand, the district court awarded post-judgment interest on the damages award from December 2, 1981, the date of the second damages verdict after the retrial. That decision, in turn, was appealed, and one of the issues raised in the appeal was whether post-judgment interest ran fr om the date of the December 2, 1981 verdict or the December 4, 1981 judgment on the verdict, albeit a differ ence of only two days. See Kaiser Aluminum, 865 F.2d at 571-72 & n.9.

Following our previous opinion in Poleto v. Consolidated Rail Corp., 826 F.2d 1270 (3d Cir . 1987), we held that post-judgment interest ran from the December 2, 1981 verdict. Id. Poleto had looked to the purpose of the post-judgment interest statute and the structure of Federal Rule of Civil Procedure 58, and found that both supported a broad reading of S 1961(a) that allowed post-judgment interest to run from the date of the verdict wher e there was a delay in the district court's entry of the judgment on the verdict. Poleto, 826 F.2d at 1280.

On appeal to the Supreme Court, the Court r ejected the Poleto rule, grounding its analysis on the plain language of S 1961(a). In reaching its result, the Court explained:

> Those courts that have determined that inter est should run from the verdict have looked to the policy underlying the postjudgment interest statute-- compensation of the plaintiff for the loss of the use of the money--in reaching their conclusion that interest should run from the date of the verdict despite the language of the statute.
>
> . . . .
>
>  The starting point for interpretation of a statute is the language itself. . . . Both the original and the amended versions of S 1961 refer specifically to the "date of judgment," which indicates a date certain. Neither alludes to the date of the verdict, and there is no legislative history that would indicate a congressional intent that interest run fr om the date of

17

> verdict rather than the date of judgment. Even though
> denial of interest from verdict to judgment may result
> in the plaintiff bearing the burden of the loss of the use
> of the money from verdict to judgment, the allocation
> of the costs accruing from litigation is a matter for the
> legislature, not the courts.

Kaiser Aluminum, 494 U.S. at 834-35.

In the instant case, Eaves makes a policy ar gument
strikingly similar to the one we accepted in Poleto but the
Supreme Court rejected in Kaiser Aluminum. She contends
that we should hold that post-judgment inter est on her
attorney's fee award began to accrue on August 11, 1998,
because the District Court expressly deter mined on that
date that she was legally entitled to a monetary award, and
it ultimately fixed the amount in its January 27, 2000
order. Put differently, Eaves urges that we find in her favor
because, since August 11, 1998, the County has had the
use of the money that the Court eventually fixed as her fee
award on January 27, 2000.

Given the tenor of the Supreme Court's analysis in Kaiser
Aluminum, we are unpersuaded by Eaves's ar gument. Her
contention in this regard is bottomed on the concept that,
beginning on August 11, 1998, the County had the use of
monies to which she was legally entitled. But in Kaiser
Aluminum, the Court was unmoved by the fact that its
denial of post-judgment interest from the date of the verdict
to the date of the entry of the judgment might r esult in the
plaintiff bearing the burden of the loss of the use of his or
her money during the interim. Moreover, the Court
expressly rejected our analysis in Poleto, which, like Eaves's
argument here, looked to the policies behind the award of
post-judgment interest and found that they supported a
broader interpretation of S 1961(a) than the plain language
of the statute allowed.

Here too, we cannot ignore the plain meaning of the term
"money judgment" and its implications in this case simply
because our interpretation of S 1961(a) may result in the
plaintiff 's bearing the burden of the loss of the use of the
attorney's fee funds to which she was legally entitled from
the date that the District Court declared her entitlement to

18

the date that the award was quantified. In our view, the Court's analysis in Kaiser Aluminum demonstrates that we are not at liberty to ignore the literal language of S 1961(a), notwithstanding the fact that the result might be that prevailing parties suffer adverse consequences from the district court's delay in fixing the amount of attorney's fees to be awarded. See MidAmerica, 962 F .2d at 1476 ("[W]e see no way to square MidAmerica's request for interest on an unliquidated attorneys' fees award with Kaiser."); see also Magee v. United States Lines, Inc., 976 F .2d 821, 823 (2d Cir. 1992) (pointing out that Kaiser Aluminum interpreted S 1961(a) literally, explaining that "[i]n Kaiser, the Supreme Court rejected the argument, which the district court herein apparently found persuasive, that under equitable principles post-judgment interest should be computed from the time that the court might have entered judgment, i.e., promptly following the jury's verdict."). And reading the statute literally requires the entry of a"money judgment" to commence the period of post-judgment interest on an attorney's fee award, which here occurred on January 27, 2000 when the District Court quantified the amount the County owed.

In reaching our result, we also ar e informed by a portion of our analysis in Kaiser Aluminum that was not disturbed by the Supreme Court on appeal. In the pr oceedings before us, the plaintiff suggested several dates fr om which the accrual of post-judgment interest could have commenced, including August 16, 1979, the date the jury deliver ed its liability verdict. But as we previously mentioned, we followed Poleto and agreed with the district court that post-judgment interest ran from December 2, 1981, the date of the second damages verdict after retrial. In reaching that conclusion, we necessarily rejected Bonjor no's suggested date of August 16, 1979, and, moreover, ruled out the possibility that post-judgment interest would run from August 22, 1979, the date of the first damages judgment that was subsequently overturned on Kaiser Aluminum's post-trial motion. With respect to those two possibilities, we explained:

> Bonjorno argues that interest should accrue from the date of the original liability verdict--August 1979--

19

because liability was ultimately affirmed[by the Court of Appeals]. However, the August 16, 1979 verdict on liability alone was insufficient under Fed. R. Civ. P. 54(c) to allow or require the court to enter judgment. Little if any authority supports the position that post-judgment interest accrues from the date of an unliquidated verdict or from a judgment vacated by a district court which is never reinstated, modified or even appealed. The vast majority of cases which construe section 1961 to allow interest to run from a verdict rather than a "judgment" involve verdicts which include an assessment of damages where judgment is later entered on the verdict amount. . . . This reasoning weighs against permitting Bonjorno to r ecover interest from August 16, 1979 (the date of the unliquidated liability verdict) or August 22, 1979 (the date of the first damage verdict which was vacated and never reinstated, increased, reduced, or even appealed).

Kaiser Aluminum, 865 F.2d at 570-71 (emphasis added).10

_____

10. This aspect of our holding in Kaiser Aluminum remains intact after Supreme Court's rejection of the rule we adopted in Poleto. The Supreme Court specifically rejected the plaintif f 's argument that post-judgment interest should have run from August 22, 1979, the date the court entered judgment on the first liability and damages verdicts, because the damages verdict subsequently was set aside as not supported by the evidence. Using language from Poleto and our opinion in Kaiser Aluminum, the Court reasoned that "wher e the judgment was not supported by the evidence, the damages have not been ascertained in any meaningful way." Kaiser Aluminum, 494 U.S. at 836; see also id. (" `[T]he purpose of post-judgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant.' ") (quoting Poleto, 826 F.2d at 1280). The Court's reference to damages being "ascertained" is taken from Poleto and our opinion in Kaiser Aluminum, both of which r ecognized that damages are "meaningfully ascertained" once the amount owed to the prevailing party has been determined in a court proceeding. Poleto, 826 F.2d at 1280 (citing Hooks v. Washington Sheraton Corp., 642 F.2d 514, 618-19 (D.C. Cir. 1980) (Mikva, J., dissenting)); see also Kaiser Aluminum, 865 F.2d at 570 (noting that, even under rule adopted in Poleto, verdicts which are sufficient to commence the post-judgment inter est period under S 1961(a) must include an "assessment of damages").

20

Our reasoning on this point in Kaiser Aluminum weighs against Eaves's assertion that post-judgment interest should run from the date that the district court ruled she was entitled to fees. For purposes of determining the date from which post-judgment interest should run, the August 11, 1998 order stating that Eaves was entitled to attorney's fees and costs is the functional equivalent of the August 16, 1979 unliquidated liability verdict in Kaiser Aluminum which we found insufficient to commence the post-judgment interest period under S 1961(a). The import of the August 11, 1998 order was that the County was liable to Eaves for some unspecified portion of her attorney's fees, but that, as of that date, her claim for those fees was not "liquidated" because it had not been reduced to a fixed amount.[11] See MidAmerica, 962 F.2d at 1477. Similarly, the August 16, 1979 liability verdict in Kaiser Aluminum amounted only to a finding that Kaiser Aluminum was liable to Bonjorno on the merits of the claim under the applicable law. Until the damages verdict occurred on August 21, 1979, the plaintiff 's claim against Kaiser Aluminum was unliquidated in the sense that the amount of monetary damages owed had not been fixed. See Poleto, 826 F.2d at 1280 ("The verdict [of liability and damages] assesses damages up to the time that it is rendered; however, payment does not occur immediately upon return of the verdict. Post-judgment interest represents the cost of withholding the amount owed the plaintiff once that sum has been determined in a court proceeding.") (emphasis added).

As the Supreme Court's analysis in Kaiser Aluminum confirms, the pivotal event for the commencement of the

_____

11. Cf. Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 395–96 (3d Cir. 2000) (explaining that a "fixed or liquidated claim" is one where the damages are "certain" and stating that prejudgment interest on liquidated claim carries interest at legal rate from time debt becomes due) (applying Pennsylvania law); E.C. Ernst, Inc. v. Koppers Co., Inc., 626 F.2d 324, 332–33 (3d Cir. 1980) (determining whether award of prejudgment interest was appropriate, stating that "only question is whether the damages were sufficiently fixed to be liquidated," and finding in plaintiff 's favor because"the sum due could be fixed by fairly objective means") (applying Pennsylvania law).

21

post-judgment interest period is the entry of the "judgment," more specifically, the "money judgment" to which S 1961(a) applies. And, as our discussion in Kaiser Aluminum demonstrates, the operative judgment must set forth the court's (or jury's) assessment of monetary damages arising out of the claim or right giving rise to the defendant's liability for the amount awarded. Kaiser Aluminum, 865 F.2d at 570; Poleto, 826 F.2d at 1280; see In re Lower Lake Erie, 998 F.2d at 1177 (stating that post-judgment interest compensates plaintiff for loss between determination of damages and defendant's payment); see also Turner v. Japan Lines, Ltd., 702 F .2d 752, 756 (9th Cir. 1983) (explaining that prejudgment interest accommodates plaintiff for loss from time of breach or injury to date of ascertainment of damages, i.e. , damages verdict, and post-judgment interest accommodates plaintiff for period from date of ascertainment of damages until payment by defendant), abrogated on other grounds by Kaiser Aluminum, 494 U.S. at 834-35.

We recognize, of course, that our appr oach in this case is different from that of the Courts of Appeals for the Fifth, Eighth, Ninth, Eleventh and Federal Circuits, and thus that the weight of authority is against our position. W e nevertheless reject the majority view because, in most cases, the courts predicated their result on a broader interpretation of S 1961(a) based primarily on policy considerations rather than the plain language of the statute.12

_____

12. We say that "most cases" wer e grounded in policy in view of the fact that the Eleventh Circuit took a differ ent approach in BankAtlantic v. Blythe Eastman Paine Webber. Ther e the court held that post-judgment interest on an attorney's fee award under Fed. R. Civ. P. 37 ran from the date the district court entered the order establishing the plaintiff 's right
to recover attorney's fees as a discovery sanction rather than the date that the district court quantified the amount. See BankAtlantic, 12 F.3d at 1048. Without mentioning Copper Liquor , Mathis or Jenkins, the court reasoned that "[t]he proper date upon which interest shall be calculated for the sanction amount is July 10, 1989, the date of the sanction order" because Fed. R. Civ. P. 54(a) defined judgment as including "a decree and any order from which an appeal lies." Id. at 1053. The court's analysis thus apparently was based on its view that the defendants could have appealed the initial order awar ding discovery sanctions.

22

Additionally, we find it significant that the initial two cases
espousing the "majority view" preceded the Supreme
Court's literal interpretation of S 1961(a) in Kaiser
Aluminum, which we view as dictating our r esult. See
MidAmerica, 962 F.2d at 1476.

For example, in the initial decision addressing the
question of accrual of post-judgment interest on an
attorney's fee award, the Fifth Cir cuit in Copper Liquor v.
Adolph Coors & Co., held that post-judgment interest on an
award of fees and/or costs runs from the date of the
"judgment establishing the right to fees or costs, as the
case may be."13 See Copper Liquor, 701 F.2d at 545.

_____

We are unpersuaded by the Eleventh Cir cuit's analysis. First, although
it is true that Fed. R. Civ. P. 54(a) defines "judgment," the definition
provides that it is to be applied to the ter m "as used in these rules,"
and
states only that it "includes" a decree or any order from which an appeal
lies. Thus, the Rule itself does not purport to define "judgment" as used
in statutory provisions such as, for example,S 1961(a), and it thus
leaves room for the possibility that the ter m "judgment" as used in
S 1961(a) could include a district court or der that does not fall within
the
narrow class of a "decree and any or der from which an appeal lies." In
re Lower Lake Erie, 998 F.2d at 1177–78.

Second, and perhaps more importantly, by fashioning a rule that ties
the commencement of the post-judgment interest period to the entry of
the "judgment" as defined in Rule 54(a), the BankAtlantic court
overlooked the fact that S 1961(a)'s use of the term "judgment" in the
third sentence is a shorthand refer ence back to the "money judgment"
specified in the first sentence of that subsection. Thus, in looking only
to Rule 54(a)'s definition of "judgment," the court did not consider what
we see as the real issue––whether the district court's order resolving the
motion for sanctions was, in actuality, a "money judgment," given that
the order did not set a fixed amount of money to be paid to the plaintiff.
While we recognize that the "money judgment" at issue in a given case
also might qualify as a "judgment" for purposes of determining finality
under Rule 54(a), there is no legal basis for concluding that S 1961(a)
can be read as allowing post-judgment inter est only on "judgments" as
defined exclusively by Rule 54(a). Cf. McDonald v. McCarthy, 966 F.2d
112, 115 (3d Cir. 1992) (looking to advisory committee's note to Fed. R.
App. 39 which indicated that reference to"costs" found therein should
be defined according to 28 U.S.C. S 1920).

13. In Devex, we relied upon Copper Liquor to hold that a prevailing party
who is awarded taxable costs is entitled to post-judgment interest on the

23

Notably, however, the court did not pr ovide any reasoning
as to why it adopted the rule that it did, and seemed to rely
on equitable considerations to justify the r esult.14 See id. at

_____

costs award. Devex, 749 F.2d at 1026. We note, however, that the issue
presented in Devex was not the date fr om which post-judgment interest
should run on an award of costs. Rather , the defendant argued
unsuccessfully that post-judgment interest on an award of costs was not
available at all under S 1961(a). We need not, and do not, address the
open issue of the date from which post-judgment interest would run on
costs taxed pursuant to 28 U.S.C. S 1920, see, e.g., BankAtlantic, 12
F.3d at 1047; Georgia Ass'n of Retarded Citizens v. McDaniel, 855 F.2d
794, 799 (11th Cir. 1988), because the District Court's order in the
instant case did not award post-judgment inter est on its $582 award of
taxable costs, and Eaves has not challenged that ruling.

14. We are aware that the Fifth Circuit has considered whether its ruling
in Copper Liquor was overruled by Kaiser Aluminum, and has determined
that Copper Liquor remains good law. Louisiana Power & Light Co., 50
F.3d at 332. The Fifth Circuit r ead Kaiser Aluminum as consistent with
the result in Copper Liquor based on the Supreme Court's statement that
"where the judgment is not supported by the evidence, the damages have
not been ascertained in any meaningful way." Kaiser Aluminum, 494 U.S.
at 836. The Fifth Circuit explained: "[b]ecause the earlier judgment in
Kaiser was invalid, the party had no entitlement to damages on that
date. Thus, the reasoning in Kaiser is consistent with Copper Liquor's
mandate that interest should not accrue until the party becomes entitled
to the award." Louisiana Power & Light , 50 F.3d at 332.

We agree that on the surface, Copper Liquor can be reconciled with
Kaiser Aluminum to the extent that the Court's statement in Kaiser
Aluminum suggests that until the second damages judgment was
entered, the plaintiff had not established, as an evidentiary matter, that
she was "entitled" to any monetary damages. Nevertheless, our careful
review of the entire discussion in Kaiser Aluminum confirms that, on
balance, the result in that case must be viewed as undermining the
analysis underlying the Copper Liquor rule. First, as we previously
mentioned, the rule in Copper Liquor cannot be squared with the plain
meaning of the term "any money judgment" found in S 1961(a). Second,
and perhaps more importantly, as we indicated in note 10, the Court's
reference to the point at which the damages are "meaningfully
ascertained" came from Poleto, which in turn explained that damages are
"ascertained" at the point at which the sum owed "has been determined
in a court proceeding,"--in that case, by the damages verdict. Poleto, 826
F.2d at 1280. Against the backdrop of Poleto and our opinion in Kaiser

24

544 (observing, in overruling Carpa, Inc. v. W ard Foods, 567 F.2d 1316 (5th Cir. 1978), that"because a dollar today is worth more than a dollar in the futur e, the only way [a party] can be made whole is to award him interest from the time he should have received the money").

Subsequently, in Mathis v. Spears, the Federal Circuit followed Copper Liquor because, in its view,"the provision for calculating interest from the entry of the judgment deters the use of the appellate process by the judgment debtor solely as a means of prolonging its fr ee use of money owed. . . ." See Mathis, 857 F.2d at 760. However, the analysis in Mathis is inapposite given that the rule we have approved today would not encourage litigants tofile frivolous appeals of the attorney's fee awar d. Indeed, we already have held in Institutionalized Juveniles that in certain circumstances, post-judgment inter est on an attorney's fee award runs from the date of the original judgment even if that judgment was modified on appeal. See Institutionalized Juveniles, 758 F.2d at 927. Thus, the equitable consideration identified in Mathis  is not implicated, as we are not concerned in this case with the time period between the judgment in the district court and the judgment in the court of appeals, but, rather , must choose between two judgments entered in the district court for purposes of calculating the post-judgment inter est amount owed.

_____

Aluminum, we read the Supreme Court's opinion in Kaiser Aluminum as simply having extended the "ascertainment of the damages" rationale first discussed in Poleto to the facts pr esented in that case. Therefore, rather than viewing that discussion in Kaiser Aluminum solely from the standpoint of when the plaintiff became "entitled" to damages as an evidentiary matter, it could be read as also predicated on the fact that the damages were not "ascertained" until the second judgment because the first damages verdict had been overtur ned, thus leaving no valid judicial determination of the sum actually owed to the plaintiff. At all events, when considered in light of Poleto  and our discussion in Kaiser Aluminum, we are convinced that the Fifth Circuit in Louisiana Power & Light Co. focused too narrowly on "entitlement" as the key to applying the "ascertainment of the damage" principle in Kaiser Aluminum in the attorney's fee context.

25

Moreover, the Eighth Circuit in Jenkins v. State of Missouri, and the Ninth Circuit in Friend v. Kolodzieczak, both relied on policy justifications to per mit post-judgment interest to accrue on an unquantified attor ney's fee judgment without considering the impact of the plain language of S 1961(a). See Kolodzieczak , 72 F.3d at 1386; Jenkins, 931 F.2d at 1273. In Jenkins , for example, the court observed that the award of interest serves the "make whole" objective of fee awards in civil rights cases and cautioned that "if the accrual of post-judgment interest is delayed until fee awards are quantified,. . . attorneys are not fully compensated for their successful ef forts, [and] they may be reluctant to take on complex and expensive litigation." Id. at 1276-77. The court in Kolodzieczak similarly observed that allowing post-judgment inter est to accrue from the judgment establishing the right to fees ensures that civil rights attorneys ar e fully compensated for the delay in payment. See Kolodzieczak, 72 F .3d at 1392.15

In our view, however, the rule that we have adopted does not frustrate the "make whole" objective of attorney fee awards in civil rights cases. While we r ecognize that our construction of S 1961(a) limits the amount of post-judgment interest that accrues on an attor ney's fee judgment, we do not hold today that post-judgment interest on an attorney's fee award is not available in general. Rather, we find only that post-judgment interest does not begin to run until the court fixes the amount owed--in other words, it commences upon the entry of the"money judgment."

Moreover, while the courts in Jenkins and Kolodzieczak correctly point out the importance of fully compensating civil rights attorneys who take on complex litigation, the courts did not consider the fact that the same r esult may be obtained if the district court applies an appr opriate form

_____

15. The court in Kolodzieczak actually adopted the district court's analysis of the legal issues in its entirety. The district court, in turn, relied upon another district court decision in reaching its conclusion that post-judgment interest on an attor ney's fee award runs from the date of entitlement rather than the date of quantification. See Kolodzieczak, 72 F.3d at 1392 (citing,inter alia, Finkelstein v. Bergna, 804 F. Supp. 1235, 1239 (N.D. Cal. 1992)).

of a delay-in-payment adjustment to the lodestar amount in calculating the fee award. The Supreme Court has equated the adjustment allowed for the delay in payment in civil rights cases with an award of prejudgment interest on the attorney's fee award. See Missouri v. Jenkins, 491 U.S. 274, 282 n.3 (1989); Library of Congress v. Shaw, 478 U.S. 310, 322 (1986). We similarly have explained that the delay-in-payment adjustment "is designed to compensate the attorney for the time gap between the actual expenditure of services and the fee award," and that post-judgment interest covers the delay in receipt during the period from the fee determination to payment. Black Grievance Comm. v. Philadelphia Elec. Co., 802 F.2d 648, 656 (3d Cir. 1986), vacated and remanded on other grounds , 483 U.S. 1015 (1987). In Keenan v. City of Philadelphia, 983 F.2d 459 (3d Cir. 1992), we noted that "in granting plaintiffs compensation for delay, two methods may be used: basing the fee award on current rates or adjusting the fee based on historical rates to reflect its present value." Id. at 476.

Indeed, where the plaintiff presents adequate evidentiary support documenting the costs incurred because of the delay in receipt of funds, such enhancements ar e permitted for the very purpose of compensating counsel for the delay in receipt of the fees until the litigation has concluded. See Blum v. Witco Chem. Corp., 888 F.2d 975, 985 (3d Cir. 1989); Institutionalized Juveniles, 758 F .2d at 923 (discussing factors informing court's discr etion when awarding delay in payment enhancement); cf. In re Burlington N., 810 F.2d at 609 (r ejecting plaintiffs' request for prejudgment interest to account for delay between filing of fee petition and judgment awarding attor ney's fees in part because "[i]n the absence of evidence, we have no basis on which to conclude that payment based on 1984 rates compensated lead counsel only for delay in payment up to that time") (emphasis added). Thus, an appr opriate adjustment for the delay in payment would ensur e that attorneys are fully compensated for their efforts and also would be consistent with S 1961(a)'s r equirement that post-judgment interest does not begin to accrue until the entry of the money judgment.16

_____

16. Although the District Court did not addr ess it, but given its apparent
concern as to who should bear the cost of delay, we leave open the

27

IV. CONCLUSION

Given the foregoing analysis, we hold that pursuant to 28 U.S.C. S 1961(a), post-judgment interest on an attorney's fee award runs from the date that the District Court enters a judgment quantifying the amount of fees owed to the prevailing party rather than the date that the Court finds that the party is entitled to recover fees, if those determinations are made separately. Her e, the District Court intended to compensate Eaves for the delay in payment occasioned by court backlog from August 11, 1998, the date of the District Court's judgment stating that she was entitled to attorney's fees, to January 27, 2000, the date the Court fixed the amount owed. W e hold that the District Court erred in awarding post-judgment interest

_____

possibility that on remand, the Court might consider compensating Eaves for the delay that occurred in this case by applying our precedents permitting an adjustment to the lodestar amount to account for the "delay in payment" factor often present in civil rights cases. See, e.g. Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp., 995 F.2d 414, 425-26 (3d Cir. 1993); Keenan, 983 F.2d at 476; Blum, 888 F.2d at 984-85; Student Pub. Interest Research Group of New Jersey, Inc. v. AT&T Bell Labs, 842 F.2d 1436, 1453-54 (3d Cir . 1988); Black Grievance Comm., 802 F.2d at 655-56; Institutionalized Juveniles, 758 F.2d at 923-34. In pointing out the possibility for such an enhancement on remand, we have not overlooked the fact that the District Court, on January 27, 2000, calculated the lodestar by using counsels'"current" billing rates (as of the date of the fee petition in May 1998) rather than their historical rates charged for services at the time they were rendered, and that the use of such rates may dictate that no enhancement is warranted. See Jenkins, 491 U.S. at 284; Institutionalized Juveniles, 758 F.2d at 923 n.41 (dicta); Copeland v. Marshall, 641 F.2d 880, 893 n.23 (D.C. Cir. 1980) (en banc). But see In re Cont'l Illinois Sec. Litig., 962 F.2d 566, 571 (7th Cir. 1992); see also Smith v. Vill. of Maywood, 17 F.3d 219, 221 (7th Cir. 1994). Moreover , while we realize that the District Court did award a 15 percent contingency enhancement under the NJLAD, we note that such an enhancement is distinct from an adjustment to account for a delay in payment. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 716 (1987) ("Although delay and the risk of nonpayment ar e often mentioned in the same breadth, adjusting for the former is a distinct issue that is not involved in this case. We do not suggest . . . that adjustments for delay are inconsistent with the typical fee shifting statute.").

28

under S 1961(a) from the entry of the August 11, 1998 order to accomplish that goal, because that or der did not constitute a "money judgment" from which post-judgment interest could run.

Accordingly, we will VACATE the District Court's January 27, 2000 order and remand the matter to the District Court for the entry of an appropriate order consistent with this opinion. We will also AFFIRM the District Court's rulings with respect to the other issues the County pr esented in this appeal.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit