**HAPPY CHEF SYSTEMS, INC., Appellee,**

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY; Cobstell Realty, Inc.; and Westbrook Limited Partnership, Appellants.**

No. 90–2341.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1991.

Decided May 22, 1991.

Rehearing Denied July 16, 1991.

Peter S. Cannon, Des Moines, Iowa, for appellants.

Diane M. Stahle, Des Moines, Iowa, for appellee.

Before BOWMAN, MAGILL and LOKEN, Circuit Judges.

MAGILL, Circuit Judge.

John Hancock Mutual Life Insurance Company, Cobstell Realty, Inc., and Westbrook Limited Partnership appeal from the judgment and order of the district court granting them supplemental relief in a declaratory judgment action brought by their former tenant, Happy Chef Systems. The appellants argue that the district court erred in (1) denying them prejudgment interest from the date the declaratory judgment action was filed; (2) denying them damages for future unpaid rent; (3) refusing to impose Rule 11 sanctions on Happy Chef and its attorney; and (4) denying them damages for the expense of reroofing the building. We affirm the judgment as modified and remand for recalculation of interest.

I.

In March 1978, Happy Chef Systems, Inc., executed a written lease agreement for a building in Story County, Iowa, to be occupied by a Happy Chef restaurant. The lessor was the predecessor in interest of appellants Westbrook Limited Partnership and Cobstell Realty, Inc. Appellant John Hancock holds the mortgage on the land on which the building stands. The lease was for a twenty-year period beginning in June 1979 at a rent of $37,000 per year. The agreement obligated the tenant to pay for all necessary repairs during the term of the lease and for any expenses of reletting the building if the tenant defaulted.

The location proved unprofitable for Happy Chef, and in 1983 the parties began trying to find a replacement tenant. Frustrated by the long delay, in July 1986 Happy Chef wrote a letter to the appellants notifying them of Happy Chef's intent to stop paying rent as of September 1, 1986. The letter asked them to make an election of remedies under paragraph 17 of the lease, which provided that the lessor could terminate the lease on thirty days' notice if the lessee defaulted. When the appellants refused to exercise their option to end the lease, Happy Chef abandoned the premises and brought a declaratory judgment action asking the court to determine that the lease had been terminated. In their answer, the appellants requested that the court determine that Happy Chef had breached the lease by failing to pay rent and asked the court to grant "appropriate supplemental relief in accordance therewith."

While the action was pending, the appellants began looking for a new tenant. In 1988, another restaurant called Clyde's signed a three-year lease. The lease with Clyde's included three two-year options to renew and was for less rent than Happy Chef paid.

A bench trial was held October 16–18, 1989. In an order entered on October 18, the district court determined that the appellants were entitled to a judgment requiring Happy Chef to perform its lease obligations. It did not enter such a judgment, however. At the end of the trial, there was some dispute about whether the court could award damages without the appellants having filed a counterclaim. Therefore, on October 30, the appellants filed a motion for supplemental relief pursuant to 28 U.S.C. § 2202 (1988). On November 6, they also filed an application for adjudication of a question of law, asking the court to determine whether they were entitled to recover damages from loss of future rent payments due under the twenty-year Happy Chef lease.

On February 21, 1990, the court issued a judgment and order holding that Happy Chef was fully obligated to perform its lease with the appellants. It also granted the motion for supplemental relief, but ordered discovery and an evidentiary hearing on the issue of damages because the trial record was not adequate to enter a judgment on that issue. After the evidentiary hearing, the court entered another order on May 25, 1990. In that order the court awarded the appellants $123,788.13 for rent, representing the total of all monthly rent payments from September of 1986, when Happy Chef stopped paying rent, until September 25, 1991, the expiration date of the lease with Clyde's, less rent paid and expected to be paid by Clyde's until that date. The court refused, however, to award any damages for rent during the last eight years of the Happy Chef lease, holding that the appellants had failed in their burden of proof as to future damages after September 25, 1991. The court also awarded the appellants $26,051.39 for repairs, insurance, taxes, and other expenses Happy Chef was required to pay for under the lease; however, it allowed only partial reimbursement for several repairs it deemed more extensive and more costly than necessary, including replacement of the roof. The court also awarded interest at 8.7% from February 21, 1990, the date the appellants' request for supplemental declaratory relief was granted. Finally, the court declined to impose Rule 11 sanctions on Happy Chef for its allegedly improper summary judgment motion, concluding that "the parties' intemperate conduct, and their attorneys' tactics, did not rise to the level of violations of Rule 11." Order of May 25, 1990, *Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co.*, Civil No. 87–864–A, at 6 (S.D.Iowa) (May 25 Order). The appellants' award totaled $149,839.52, plus costs and interest.

## II.

Federal jurisdiction in this suit is based on diversity of citizenship, and Iowa substantive law applies. We review de novo district court rulings on questions of state law. *See Salve Regina College v. Russell,* — U.S. ——, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

### A. Interest

In a diversity action, state law governs prejudgment interest; federal law governs postjudgment interest. *Todd Farm Corp. v. Navistar Int'l Corp.,* 835 F.2d 1253, 1257 (8th Cir.1983) (citing *Weitz Co., Inc. v. Mo–Kan Carpet, Inc.,* 723 F.2d 1382, 1385 (8th Cir.1983)). Iowa Code § 535.3 provides for 10% interest on money judgments from the date of commencement of the action.[1] 28 U.S.C. § 1961(a) sets the interest rate on judgments in federal suits based on Treasury bill yield.[2] At the time

---

1. Section 535.3 provides, in relevant part: "Interest shall be allowed on all money due on judgments and decrees of courts at the rate of ten percent per year.... The interest shall accrue from the date of the commencement of the action." Iowa Code Ann. § 535.3 (West Supp. 1991).

2. Section 1961(a) provides, in relevant part:

of this action, the interest rate was 8.7%. Interest is calculated from the date of entry of the judgment. Therefore, a successful litigant in a diversity suit for damages in Iowa is entitled to interest at 10% from the date the action is filed until the date judgment is entered in his or her favor, and interest at the floating federal rate thereafter.[3]

The appellants complain that the district court erred in refusing to award prejudgment interest. They contend that interest should run from August 28, 1986, when Happy Chef brought the original declaratory judgment action. The district court ruled that the appellants were not entitled to interest until February 21, 1990, "the date when defendants were first permitted to assert their claim for supplemental declaratory relief." May 25 Order at 5. February 21 was the date on which the court entered judgment for the appellants in the declaratory judgment action and granted their motion for supplemental relief, while reserving judgment on the amount of damages until after an evidentiary hearing on that issue.

In denying prejudgment interest, the district court relied on *Dillon v. City of Davenport*, 366 N.W.2d 918, 926–27 (Iowa 1985). The *Dillon* court held that the plaintiff was not entitled to prejudgment interest under § 535.3 when he secured a decree enforcing a settlement agreement. The reason was that the order of specific performance was not the equivalent of a judgment because the settlement agreement required approval from the Industrial Commissioner before it could go into effect. The district court apparently interpreted *Dillon* to mean that the declaratory judgment in favor of the appellants was not enough, and that they did not receive a judgment in their favor until the court agreed to entertain their claim for damages

under § 2202. The court therefore awarded postjudgment interest only from that date. After citing *Dillon*, the district court added:

> This due date [February 21, 1990] may tend to undercompensate defendants for unpaid past rentals and expenses defendants incurred that plaintiff now must pay; but this due date also tends to overcompensate defendants for unpaid future rentals on which plaintiff would ordinarily owe only the present value. To the extent this due date for payment of interest penalizes defendants, the court concludes that is not unfair because it was brought about by their late assertion of the claim for supplemental declaratory relief.

May 25 Order at 5–6.

The district court's reliance on *Dillon* was misplaced. *Dillon* concerns the interpretation of the "money due on judgments and decrees of courts" language of § 535.3, not the interpretation of "date of the commencement of the action." The holding in *Dillon* does not address the issue of when the appellants' § 2202 claim was filed for purposes of § 535.3. Unlike the plaintiff in *Dillon*, the appellants here did receive a money judgment and are entitled to prejudgment interest on it.

■ The ordinary rule in Iowa is that an action commences when the complaint is filed. *See* Iowa R.Civ.P. 48. In cases where the defendant is awarded damages, courts interpreting Iowa law have held that the action commences for interest purposes when the counterclaim is filed. *See Sedco Int'l, S.A. v. Cory*, 522 F.Supp. 254, 330–31 (S.D.Iowa 1981), *aff'd*, 683 F.2d 1201 (8th Cir.), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982). Here, however, there was no counterclaim; instead, the appellants filed a § 2202 motion for supplemental relief after the court had already

---

Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent ... of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

28 U.S.C. § 1961(a) (1988).

3. In addition, Iowa Code § 535.2 provides for 5% interest on money judgments between the time the money became due and the action was filed, but the appellants have abandoned their claim to interest under § 535.2.

announced that it would grant a declaratory judgment in their favor. We agree with the district court that the appellants are not entitled to interest from the commencement of Happy Chef's action and that because their claims "first arose through the request for supplemental declaratory relief," May 25 Order at 5, they must suffer the consequences of asserting their claim belatedly in that manner instead of in a counterclaim. Nevertheless, we think they should receive interest from the date the motion for supplemental relief was filed, not the date it was granted, because filing a § 2202 motion is analogous to filing a counterclaim or bringing a separate action. *Cf. Morris v. Travisono,* 373 F.Supp. 177, 178 (D.R.I.1974) (calling § 2202 motion for further relief an action), *aff'd,* 509 F.2d 1358 (1st Cir.1975).

■ Happy Chef argues, in support of the district court's decision, that a § 2202 motion is analogous to late amendment of a complaint by permission of the court. When an amendment adds a distinct new claim, the new claim is deemed to have been filed on the date the court allows the amendment, not the date the moving party requests it, nor does the new claim relate back to the original filing of the complaint. *See Beeck v. Aquaslide 'N' Dive Corp.,* 350 N.W.2d 149, 169 (Iowa 1984) (citing *Coachmen Indus., Inc. v. Security Trust & Sav. Bank,* 329 N.W.2d 648, 651 (Iowa 1983)). We find the analogy unpersuasive. A party has a right to file a § 2202 motion for further relief based on a declaratory judgment and need not obtain the court's permission to do so. *See Edward B. Marks Music Corp. v. Charles K. Harris Music Publishing Co.,* 255 F.2d 518, 522 (2d Cir.), *cert. denied,* 358 U.S. 831, 79 S.Ct. 51, 3 L.Ed.2d 69 (1958). Of course, whether to grant the relief requested is up to the court, but that is a decision to be made on the merits. If the court does grant relief, the movant is entitled to prejudgment interest from the date his or her claim was filed. We hold that a § 2202 post-declaratory judgment relief proceeding is commenced by the filing of a motion for the relief desired. *See* 22A Am.Jur.2d *Declaratory Judgments* § 260 (1988).

■ Iowa Code § 535.3 would seem, then, to entitle the appellants to prejudgment interest at 10% from October 30, 1989, until May 25, 1990, the date of the judgment for damages; however, Iowa case law introduces an additional wrinkle. The Iowa Supreme Court has held that the right to prejudgment interest on transactions that do not occur until after the claim is filed does not attach until the date of the transaction. *See Rowen v. LeMars Mut. Ins. Co.,* 347 N.W.2d 630, 641 (Iowa 1984); *see also Sedco,* 522 F.Supp. at 331 (predicting that Iowa Supreme Court would so hold and refusing to award prejudgment interest on expenditures made after action was brought). Therefore, the appellants cannot collect prejudgment interest on rent due after October 30, 1989, the commencement of their action.[4] To hold otherwise would unjustly enrich them by awarding interest on amounts not yet owing. *See Sedco,* 522 F.Supp. at 331. Under Iowa Code § 535.3, then, for rent payments due after October 30, 1989, the appellants are entitled to prejudgment interest at 10% from the date due until May 25, 1990, the date of the judgment for damages; they are entitled to prejudgment interest at 10% from October 30, 1989, until May 25, 1990, on all other amounts included in the judgment.

■ The district court also erred in awarding postjudgment interest from the date the motion for supplementary relief was granted, which was also the date of the declaratory judgment in the appellants' favor. Section 1961(a) does not provide for interest until a money judgment has been entered. Therefore, interest at the postjudgment rate should begin on May 25, 1990, not February 21 of that year.

To summarize, under Iowa law the appellants are entitled to prejudgment interest at 10% from October 30, 1989, or, for rent payments not yet due on that date, from

---

**4.** Because all repairs and other expenses were incurred before the motion for supplementary relief was filed, only the rent award is affected.

the date due, until May 25, 1990, the date of the judgment for damages. From May 25, 1990, they are to receive postjudgment interest at the federal rate, as required by 28 U.S.C. § 1961(a).

## B. Future Damages

■ The district court held that the appellants had not met their burden of proof as to damages after September 25, 1991, the date the current lease with Clyde's expires. Such damages are speculative. Although Clyde's has the option to extend the lease past September 1991, it has not yet decided whether to do so. In addition, it is impossible to know whether the appellants will be able to find another tenant after the lease with Clyde's is over. In the district court, the appellants claimed full rent from September 1991 through the end of the lease in 1999. They argued that this amount should not be reduced by rent that might be received from Clyde's or from any hypothetical future tenant, since it was impossible to tell at the time of the hearing whether any such payments would be forthcoming. On appeal, the appellants have modified their position and now argue that the district court should not have decided the question of future damages from the loss of Happy Chef's rent payments and that they should be allowed to recover such damages in the future as they are incurred.

The record belies the appellants' protestations that they unambiguously abandoned their claim for future damages beyond September 1991 in the district court. There was indeed some confusion on this point at the evidentiary hearing on damages. The district court had previously found that the appellants had fulfilled their duty to mitigate damages up to the time of trial, and the appellants at first thought the court had also ruled that they would do so in the future. When the judge cleared up this misunderstanding, stating that no such ruling had been made, the appellants temporarily withdrew their request for future rent. However, counsel for the appellants later repeatedly confirmed, under questioning by the judge, that the appellants were in fact asking for future rent. Appellants'

counsel did reiterate several times that the request for future damages was conditioned on a ruling that their burden of future mitigation had been satisfied, but for each such statement, he made another contradicting it. In addition, the appellants presented evidence relevant to future mitigation, and in their exhibit itemizing damages they requested rent through the end of the lease in 1999. The trial judge specifically stated during the hearing that future damages were at issue and that this would be the final evidentiary hearing in the case. The transcript of the hearing shows that the appellants wanted to keep all their options open, not that they withdrew their claim for future rent. They cannot have it both ways. They may not claim future damages, attempt to prove them, and then, when they lose, argue on appeal that the trial court should not have addressed the issue.

## C. Rule 11 Sanctions

■ The appellants contend that the district court erred in failing to impose Rule 11 sanctions on Happy Chef and its attorney for filing a frivolous summary judgment motion. A trial court's decision not to award Rule 11 sanctions is reviewed for abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.*, —— U.S. ——, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990); *Crookham v. Crookham*, 914 F.2d 1027, 1029 (8th Cir.1990). Although sanctions are mandatory when a Rule 11 violation occurs, whether a violation has occurred is a matter for the court to determine. *O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir.1987). The appellants maintain that Happy Chef's summary judgment motion violated Rule 11 because Happy Chef knew that there were genuine issues of material fact. Although Happy Chef's summary judgment motion was of dubious merit at best, the district court evidently felt that the appellants' motion for Rule 11 sanctions was a case of the pot calling the kettle black:

This lawsuit simply got out of hand from an early date. . . . The parties and their

counsel all engaged in rather sharp practices that produced ill-will and unnecessary expenditures of time and effort by all parties, including the court. The parties, counsel, and the court have all learned valuable lessons; but no sanction nor remedy will be imposed. May 25 Order at 7. We find no abuse of discretion. The trial court's familiarity with the case, parties, and counsel deserves our deference, *Lane v. Peterson*, 851 F.2d 193, 199 (8th Cir.1988); *see Cooter & Gell*, 110 S.Ct. at 2460, and accordingly, we affirm.

### D. Roof Replacement

 The appellants argue that the district court should have awarded them the cost of replacing the roof of the Happy Chef building as an offset to the credit Happy Chef received for the rent paid by Clyde's. Paragraph 17(a) of the Happy Chef lease provides that if Happy Chef defaults, the lessor may rerent the building, but Happy Chef must continue to pay the difference between its rent and the net proceeds of the reletting. The appellants contend that there was undisputed testimony that replacing the old tar-and-gravel roof with a Carlisle (rubber-based) roof was necessary to get Clyde's to rent the property. They assert that the district court awarded them nothing for the roof replacement. Simple arithmetic reveals, however, that they received at least 80% of what they requested for the reroofing.[5] It is hard to understand how the appellants could have failed to realize this, especially since the language of the district court's order also indicates that part of the cost was awarded: *"Part of* the parking lot painting, sewer cleaning, sidewalk reconstruction, and re-roofing of the building were more extensive and therefore more costly than reasonably necessary." May 25 Order at 4–5 (emphasis added) (explaining why only $11,000 was awarded for re-

pairs instead of the $13,076 requested). We will treat the appeal on this point as a claim that the district court should have awarded the appellants the full cost of roof replacement.

At the evidentiary hearing, there was testimony from several witnesses, including one called by the appellants, that the new Carlisle roof was a better-quality, longer-lasting kind of roof than the old. Another witness testified that he inspected the old roof at least six times and found no evidence of any leaks, and no witness testified to personal knowledge of any leaks. Contrary to the appellants' contention in their brief, there was no testimony that Clyde's had insisted that the roof be replaced with a Carlisle roof, only that it be replaced. The district court's conclusion that the roof and certain other repairs were more extensive and therefore more costly than necessary is a finding of fact that may be reversed only if clearly erroneous. The trial court's award for reroofing was generous in light of testimony that the reasonable cost of replacing the roof was only ⅓ of the amount spent. We find no error in the district court's failure to award the full cost of the new roof.

### CONCLUSION

The judgment of the district court is affirmed as modified. We remand for recalculation of interest under Iowa Code § 535.3 at 10% from October 30, 1989, or for rent payments due after October 30, 1989, from the date due, until May 25, 1990. From May 25, 1990, the date of the judgment for damages, the appellants are to receive interest on the entire judgment of $149,839.52 at the federal rate, pursuant to 28 U.S.C. § 1961(a).

---

**5.** Because the district court did not itemize its repair award, the exact amount allotted for roof replacement cannot be determined. A lump sum of $11,000 for all repairs was allowed out of a total of $13,076 requested. If one takes the worst-case scenario and assumes that all other repairs other than the roof were reimbursed in

full, that still leaves $8,512.18 for the roof, out of a total of $10,589.17 requested (80%). *See* Defendants' Exhibit 0–1. In addition, it is unlikely that the trial court awarded the full cost of all the other repairs, as its order listed several repairs besides the roof that were deemed excessive.