Accordingly, we **AFFIRM** the order of the Honorable James L. Graham of the United States District Court of the Southern District of Ohio.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0171P (6th Cir.)
File Name: 01a0171p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――

ASSOCIATED GENERAL
CONTRACTORS OF OHIO, INC.;
ASSOCIATED GENERAL
CONTRACTORS OF
NORTHWEST OHIO, INC.,
            *Plaintiffs-Appellees,*

SHERMAN R. SMOOT
COMPANY, INC.,
            *Intervenor-Appellee,*

                *v.*

SANDRA A. DRABIK, Director
of Administrative Services;
REGINALD WILKINSON,
Director of Rehabilitation and
Correction,
            *Defendants-Appellants.*

Nos. 99-4401;
00-3104

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 98-00943—James L. Graham, District Judge.

Argued: November 2, 2000

1

Decided and Filed: May 23, 2001

Before: KEITH, BOGGS, and COLE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Sharon A. Jennings, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellants. Kevin R. McDermott, SCHOTTENSTEIN, ZOX & DUNN, Columbus, Ohio, for Appellees. **ON BRIEF:** Elizabeth Luper Schuster, Judith L. French, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellants. Kevin R. McDermott, SCHOTTENSTEIN, ZOX & DUNN, Columbus, Ohio, for Appellees.

_____

**OPINION**

_____

DAMON J. KEITH, Circuit Judge. Plaintiffs-appellees were the prevailing party in a suit against the State of Ohio. The district court included in its final judgment on the merits an award of reasonable attorney fees. Eleven months later, the district court entered judgment quantifying the fee award. In a subsequent order, the court held that plaintiffs-appellees were entitled to interest on attorney fees running from the date of the merits judgment. For the reasons that follow, we **AFFIRM** decision of the district court.

## I. BACKGROUND

In September 1998, the State of Ohio, through the Ohio Department of Administrative Services ("DAS") and the Ohio Department of Rehabilitation and Correction ("DRC"), received bids for the construction of the Toledo Correctional Institution Administration Building. Pursuant to the Ohio Minority Business Enterprise Act ("MBEA"), Ohio Rev.

quantification of the fees. That rule provides the losing party with incentive to repeatedly request extensions, or seek a stay on the issue of attorney fees pending the merits appeal, as the state did here. The prevailing party (or perhaps her attorney) will then be out of pocket for what is potentially a long period of time while awaiting quantification. On the other hand, the losing party will suffer no actual prejudice or unfair burden by the accrual of interest from the date of entitlement, since that party has the use of the money until payment. An award of interest on attorney fees does not act as a penalty, but rather serves the same purpose as an award of attorney fees. Equitable considerations, as well as the plain language of the statute, lead us to the conclusion that the *Copper Liquor* rule is by far the better rule.

## IV. CONCLUSION

In sum, we find that the same reasons that guided our decision of whether post-judgment interest accrues on an attorney fee award pursuant to § 1961(a) guide our decision on the issue of the timing of accrual. We believe that the language of § 1961(a) permits the interest to run on an fee award from the time of entry of the judgment which unconditionally entitles the prevailing party to reasonable attorney fees. Moreover, we do not believe that the Supreme Court's decision in *Bonjorno* or Sixth Circuit precedent dictate a different result. We see no reason to follow those few cases that read into the term "money judgment" the requirement that an award of attorney fees be quantified prior to accruing interest. Finally, we find that the equitable considerations weigh entirely in favor of interest accrual on attorney fees from the date of the judgment that establishes the party's entitlement to such fees. We hold that AGC is entitled to interest on its attorney fees running from November 3, 1998, the date it became unconditionally entitled to such fees.

interpretation of "money judgment" as including both the judgment entitling the party to fees and the judgment quantifying those fees, those courts addressed the issue of whether post-judgment interest accrued from either the initial "money judgment" or the second "money judgment." Therefore, equitable concerns guided those courts in their decisions.

We recognize that Congress enacted § 1961 with the knowledge that a "money judgment" often included, either expressly or by legal implication, an award of reasonable attorney fees and costs. We believe that Congress used the term "money judgment" in its commonly understood sense of the judgment on a verdict. *Cf. Eaves*, 239 F.3d at 535 (noting that "the phrase 'money judgment' commonly refers to a judgment entered upon a jury verdict"). Therefore, it is logical to conclude that Congress intended that post-judgment interest on all damages, including reasonable attorney fees and costs, would run from entry of judgment on the merits. " 'By linking all post-judgment activity to the entry of a judgment, the courts have been provided a uniform time from which to determine post-judgment issues.' " *Bonjorno*, 494 U.S. at 1575-76 (quoting Comment, Post-Judgment Interest in the Federal Courts, 37 Emory L.J. 495, 499 (1988). In our view, an analysis of the language of § 1961(a) leads to the conclusion that a "money judgment" is the judgment that unconditionally entitles the prevailing party to reasonable attorney fees.

While we do not base our decision on the policy considerations emphasized by the courts espousing the *Copper Liquor* rule, we are convinced that such considerations support our conclusion. Indeed, we find inconsistent those court decisions that hold post-judgment interest accrues on attorney fees pursuant to § 1961, but then narrowly construe that provision to conclude that interest runs only from the judgment quantifying the award. If interest does not accrue from the time a party becomes entitled to such fees, the losing party has every reason to delay

Code Ann. § 123.151, the DAS and DRC set aside bidding for the construction work for minority-owned businesses ("MBEs") only. Therefore, otherwise qualified non-MBEs were excluded from bidding on the project on racial grounds.

On September 18, 1998, plaintiffs-appellees Associated General Contractors of Ohio and Associated General Contractors of Northwest Ohio (collectively "AGC") filed suit pursuant to 42 U.S.C. § 1983 against defendants-appellants Sandra Drabik, Director of the DAS, and Reginald Wilkenson, Director of the DRC (collectively the "state"). AGC alleged that its members, who are Ohio building contractors, were denied the opportunity to bid on the construction project. AGC challenged the constitutionality of the MBEA, and sought declaratory and injunctive relief.

The district court consolidated the preliminary injunction hearing with a trial on the merits. On November 3, 1998, the court entered judgment in favor of AGC, holding the MBEA unconstitutional and enjoining its enforcement. *See Associated Gen. Contractors of Ohio, Inc. v. Drabik*, No. C2-98-943, 1998 WL 812241, at *1 (S.D. Ohio Oct. 30, 1998). The judgment included a statement that AGC was a prevailing party under 42 U.S.C. § 1988, and that the court was exercising its discretion to award AGC reasonable attorney fees and costs. *See id.* The state appealed the district court's decision, and this Court affirmed. *See Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 214 F.3d 730, 740 (6th Cir. 2000), *cert. denied,* 121 S.Ct. 1089 (2001).

Pursuant to stipulation and order of the district court, AGC filed its application for attorney fees on January 11, 1999. During February and March, 1999, on three occasions, the district court granted the state's motions for extensions of time to respond to AGC's fee application. Then on April 8, 1999, the state moved for a stay of the district court's decision regarding attorney fees pending the merits appeal. The district court denied the state's motion on May 28, 1999. Thereafter, the state filed its fourth motion for an extension of

time to respond to AGC's fee application, and the court granted the motion. Finally, on July 9, 1999, the state filed its response.

On October 13, 1999, the district court entered judgment granting AGC's motion for attorney fees in the amount of $113,915.48. On November 10, 1999, the state filed a notice of appeal from the district court's judgment quantifying AGC's fee award.

On October 13, 1999, the state moved for a stay of enforcement of the attorney fee award pending appeal, and for approval of a supersedeas bond equal to the full amount of the award. On December 7, 1999, the district court granted the state's motion, and ordered that the state post a bond or make a cash deposit with the clerk in the full amount of the judgment and "accrued interest." Subsequently, AGC moved to clarify or amend the district court's order of December 7, 1999 seeking interest on the attorney fee award from November 3, 1998, the date of the district court's judgment awarding AGC reasonable attorney fees. In its response to AGC's motion, the state argued that interest should accrue only from October 13, 1999, the date the attorney fee award was quantified.

On January 5, 2000, the district court granted AGC's motion to clarify its order of December 7, 1999. The district court held that interest on the attorney fees accrued from November 3, 1998, the date of the judgment on the merits. The state filed a timely notice of appeal.[1]

---

[1] On January 10, 2000, the state moved to consolidate the appeal filed on November 10, 1999 (Number 99-4401), which challenged the judgment quantifying AGC's attorney fees, with the appeal filed January 18, 2000 (Number 00-3104). We granted the state's motion. The state only raised one claim in its Number 99-4401 appeal. The state notes that the appeal from the district court's judgment on the merits (entered November 3, 1998) was pending. Therefore, the state contends that "[i]f this Court reverses or remands that judgment, then AGC would no longer be a prevailing party entitled to attorneys' fees pursuant to 42 U.S.C.

the prevailing party due to the time-value of money, and that the losing party "suffers no prejudice from any delay in quantifying the award because it has the use of the money in the interim and because the statutory interest rate is tied to the U.S. Treasury Bill rate." *Id*. at 1277 (citing 28 U.S.C. § 1961(a)).

In *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, the Eleventh Circuit held that "the  award [of attorney fees and costs] bears interest from the date of the original judgment[]" on the merits. 12 F.3d 1045, 1048 (11th Cir. 1994). There, the district court awarded attorney fees and costs as part of the judgment on the merits, but did not quantify the award until a later date. *See id*. at 1048. The Eleventh Circuit stated that Supreme Court's precedent, referring to *Bonjorno*, as well as circuit precedent, necessitated that result. *See id*.

Finally, we note that the Ninth Circuit has also concluded, without elaboration, that post-judgment "[i]nterest runs from the date that entitlement to [attorney] fees is secured, rather than from the date that the exact quantity of fees is set." *Friend v. Kolodzieczak*, 72 F.3d 1386, 1391-92 (9th Cir. 1995) (citing *Finkelstein v. Bergna*, 804 F. Supp. 1235, 1239-40 (N.D. Cal. 1992) and *Perkins v. Standard Oil Co.*, 487 F.2d 672, 674-76 (9th Cir. 1973)).

In its review of the above cases, the Third Circuit in *Eaves* noted that, "[i]n reaching their result, the leading cases have relied principally upon the policy underlying the post-judgment interest statute: compensation of the plaintiff (and the attorney) for the loss of the use of the money." 239 F.3d at 531. While we agree that some of these courts emphasized this and other equitable concerns, we do not agree that these courts "ignore[d] a textual analysis of § 1961(a)." *Id*. Rather, we believe that these courts simply were not bound by precedent to read into the term "money judgment" a requirement that an award of attorney fees to which the prevailing party was entitled be reduced to a sum certain. Because the plain language of  § 1961(a) permits an

interest begins to run on an award of attorney fees and costs to a victorious plaintiff. 701 F.2d 542, 544-45 (5th Cir. 1983) (en banc). The court determined that "[t]he relevant judgment for purposes of determining when interest begins to run [on attorney fees and costs] is the judgment establishing the right to fees or costs . . . ." *Id.* Pursuant to the *Copper Liquor* rule, interest accrues on attorney fees and costs when such expenses are included in a judgment, and the party is unconditionally entitled to such expenses either expressly or by statutory right. *Id.*

The Fifth Circuit had the opportunity to reconsider the *Copper Liquor* rule in light of the Supreme Court's *Bonjorno* decision. In *Louisiana Power & Light Co. v. Kellstrom*, the Fifth Circuit held that *Bonjorno* did not overrule *Copper Liquor*, but rather found the *Copper Liquor* rule consistent with *Bonjorno*. 50 F.3d 319, 332 (5th Cir. 1995). As noted above, we agree with the Fifth Circuit that awarding postjudgment interest on an award of attorney fees included in a judgment which is not entirely set aside is consistent with *Bonjorno*.

In *Mathis v. Spears*, the Federal Circuit adopted the *Copper Liquor* rule as applied to an award of attorney fees pursuant to 35 U.S.C. § 285. 857 F.2d 749, 760 (Fed. Cir. 1988). That court noted that "calculating interest from entry of judgment deters use of the appellate process by the judgment debtor solely as a means of prolonging its free use of money owed the judgment creditor." *Id.* The court expressed no concern that an unquantified attorney fee award might not qualify as a "money judgment" within the meaning of § 1961.

In *Jenkins v. State of Missouri,* the Eighth Circuit similarly adopted the *Copper Liquor* rule in the context of a 42 U.S.C. § 1988 fee award. 931 F.2d 1273, 1275 (8th Cir. 1991). After considering the purposes of awarding post-judgment interest, the court concluded that these purposes were furthered by the awarding of such interest on attorney fees. *See id.* The court noted that interest on attorney fees more fully compensates

## II. STANDARD OF REVIEW

This appeal involves issues of statutory interpretation, which, as questions of law, we review *de novo*. *Vergos v. Gregg's Enterprises, Inc.*, 159 F.3d 989, 990 (6th Cir. 1998).

## III. DISCUSSION

### A. *Interest on Attorney Fees Pursuant to 28 U.S.C. § 1961(a)*

Initially, we note that this Court has never expressly decided the issue of whether an award of attorney fees awarded pursuant to 42 U.S.C. § 1988 accrues interest under 28 U.S.C. § 1961(a). Section 1961 provides, in pertinent part: "Interest shall be allowed on any money judgment in a civil case recovered in a district court . . . . Such interest shall be calculated from the date of the entry of the judgment . . . ." 28 U.S.C. 1961(a). Most of our sister circuits have either expressly or impliedly concluded that the "any money judgment" provision of § 1961 includes a judgment awarding attorney fees. *See, e.g., Eaves v. County of Cape May*, 239 F.3d 527, 530 (3d Cir. 2001); *Friend v. Kolodzieczak*, 72 F.3d 1386, 1391 (9th Cir. 1995); *Bank Atlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1052-53 (11th Cir. 1994); *MidAmerica Fed. Sav. & Loan Assoc. v. Shearson/American Express, Inc.*, 962 F.2d 1470, 1475-76 (10th Cir. 1992); *Foley v. City of Lowell, Mass.*, 948 F.2d 10, 21 (1st Cir. 1991); *Jenkins v. State of Missouri*, 931 F.2d 1273, 1275 (8th Cir. 1991); *Fleming v. County of Kane*, 898 F.2d 553, 565 (7th Cir. 1990); *Mathis v. Spears*, 857 F.2d 749 (Fed. Cir. 1988);

---

§ 1988 and this Court would be required to reverse the judgment awarding AGC attorneys' fees." Appellants' Br. at 10. This Court had not yet announced its decision in the merits appeal when the parties briefed the Court on the present appeal. However, this Court has subsequently affirmed the district court's November 3, 1998 judgment on the merits. *See Drabik*, 214 F.3d at 740. Therefore, the state's appeal from the October 13, 1999 is dismissed as moot.

*Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 543 (5th Cir. 1983) (en banc). We have found no cases rejecting this rule.

Because we see no reason to distinguish between judgments for attorney fees and judgments for other types of damages, we also construe the term "any money judgment" as including a judgment awarding attorney fees. We agree with the First Circuit that "short of straining, the plain language of section 1961(a) does not appear to permit a contrary result." *Foley*, 948 F.2d at 21.

We note that our resolution of this issue serves the underlying purpose of § 1961, which "is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990) (quoting *Polento v. Consol. Rail Corp.*, 826 F.2d 1270 (3d Cir. 1985)). Because a dollar today is worth more than a dollar in the future, the only way a party can be made whole is to grant interest from the time of the award of fees. "Any other rule would effectively reduce the judgment for attorneys' fees . . . ." *R.W.T. v. Dalton*, 712 F.2d 1225, 1234-35 (8th Cir. 1983). Moreover, awarding interest on a § 1988 fee award "serves the purpose of awarding such fees to the prevailing party, since it would more nearly compensate the victor for the expenses of the litigation." *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 544 (5th Cir. 1983).

We also note that the award of interest on attorney fees is in no sense a windfall. Defendants will suffer no actual prejudice or unfair burden by the accrual of interest, since they will have use of the money until payment, and the rate of post-judgment interest, pursuant to § 1961(a), is set at the U.S. Treasury Bill rate. *See* 28 U.S.C. § 1961(a). Importantly, allowing an attorney fee award to bear interest will eliminate the losing party's incentive to delay payment. *See Dalton*, 712 F.2d at 1235. Accordingly, we join our sister

accrues on an attorney fee award from the judgment which unconditionally entitles the prevailing party to such fees.[8]

We believe that an award of interest on attorney fees running from the date of the judgment entitling the prevailing party to such fees, albeit unquantified, is consistent with the requirements of *Bonjorno*. Such interest would not accrue on an award of damages, including attorney fees, if later reversed. If the state had succeeded in its appeal on the merits, and the original judgment been vacated or reversed, AGC would not be entitled to interest on attorney fees from the date of that judgment. However, since the district court's judgment has been upheld on appeal, AGC has been, since entry of judgment on the merits, entitled to its reasonable attorney fees.

3. ***Copper Liquor Approach***

Having concluded that a "money judgment" includes a judgment awarding reasonable attorney fees, and that *Bonjorno* and the law of this Circuit do not "dictate" the rule advanced by the state, we turn to those cases advanced by AGC that conclude that attorney fees accrue interest from the date of the judgment unconditionally awarding such fees. We note that these cases both pre- and post-date *Bonjorno*.

In *Copper Liquor, Inc. v. Adolph Coors Co.*, the Fifth Circuit articulated a general rule to be applied in determining the relevant judgment for purposes of determining when

---

[8] We are aware that this Court, in an unpublished opinion, suggested that "because § 1961 applies to 'money judgments,' it only applies to judgments in which a sum of money has been entered." *Harper v. BP Exploration & Oil, Inc.*, Nos. 99-5442, 99-5472, 2001 WL 92139, at *5 (6th Cir. Jan. 22, 2001). The issue before the Court was whether post-judgment interest accrues on attorney fees, pursuant to § 1961, from the date of a merits judgment which did not include an award of attorney fees, or from the date of the judgment awarding and quantifying the fees. *Id.* at *2. Therefore, the Court had no opportunity to consider the issue presented by this appeal.

judgment, rather than from the date that the plaintiff consented to remittitur on remand); *Arthur S. Langenderfer, Inc. v. S.E. Johnson, Co.*, 917 F.2d 1413 (6th Cir. 1990) (holding that post-judgment interest does not properly accrue from the date of a vacated judgment).

The issue we address here, however, is unlike those addressed by the Supreme Court in *Bonjorno* and the Sixth Circuit cases cited above. In none of those cases was an award of attorney fees at issue. Rather, those cases addressed whether the plaintiff was entitled to interest on a "money judgment" that was subsequently vacated, reversed or in some way altered. In *Bonjorno*, *Adkins*, and *S.E. Johnson*, a common sense approach was taken in interpreting § 1961(a), and that approach led invariably to the conclusion that an award of damages unsupported by the evidence is not entitled to accrue interest, even though part of a "money judgment." Similarly, in *Coal Resources*, we concluded that even though the initial judgment was subsequently reduced by remittitur, interest ran from the initial judgment since damages had been "sufficiently ascertained" at that time. 954 F.2d at 1275. Finally, in *Skalka*, we construed the term "judgment" in § 1961(a) to include a partial, non-appealable judgment, even though that interpretation was "potentially burdensome to defendants." 178 F.2d at 429. Our precedent requires, then, that post-judgment interest accrue on an award of damages from a judgment not entirely set aside on appeal.

Here, the district court entered a final judgment on the merits that included an award of "reasonable attorney fees" to the prevailing party pursuant to §1988. This judgment was fully supported by the evidence. *See Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 214 F.3d 730, 740 (6th Cir. 2000), *cert. denied,* 121 S.Ct. 1089 (2001). At the time the initial judgment was entered, the district court concluded that, in order to make AGC whole, the state was required to pay AGC's reasonable attorney fees. There exists no reason, in either the language or history of § 1961, nor in binding precedent, that prevents this Court from holding that interest

circuits in concluding that the phrase "any money judgment" in §1961(a) includes a judgment awarding attorney fees.

**B.  *Timing of Accrual of Interest on Attorney Fees Pursuant to 28 U.S.C. § 1961(a)***

We now turn to the following issue: Whether an award of attorney fees accrues interest, pursuant to 28 U.S.C. § 1961, from the date of the judgment that unconditionally entitles the prevailing party to reasonable attorney fees, or the date of the judgment quantifying that fee award.

AGC contends, and the district court agreed, that attorney fees accrue interest from the date of the merits judgment that establishes the prevailing party's unconditional entitlement to such fees. AGC suggests that this is the "better approach," and notes that several circuit and district courts have adopted this approach. AGC argues that "delaying the accrual of interest until determination of the fee amount would frustrate the underlying purpose for interest on fee awards, which is to compensate counsel for a successful effort." Appellees' Br. at 9 (citing *Jenkins*, 931 F.2d at 1278).

The state argues that, where the district court enters judgment stating that the prevailing party is entitled to a fee award, but does not quantify the amount of the award until a later date, interest does not begin to accrue pursuant to § 1961(a) until the court fixes the amount of the award. The state asserts that "the Supreme Court, this Circuit, and several other circuit courts have held that the monetary damages must be 'meaningfully ascertained' before interest accrues pursuant to 28 U.S.C. § 1961." Appellants' Br. at 4. The state argues that an award of attorney fees must be quantified before it is "meaningfully ascertained."

The issue of whether interest on attorney fees accrues, pursuant to § 1961(a), from the judgment which unconditionally establishes a party's right to attorney fees or from the judgment quantifying the award is one of first impression in this Court. The circuit courts are split on this

issue.  *Compare Eaves v. County of Cape May*, 239 F.3d 527, 530 (3d Cir. 2001) (holding that interest is calculated from the date of judgment quantifying attorney fees); *MidAmerica Fed. Sav. & Loan Assoc. v. Shearson/American Express, Inc.*, 962 F.2d 1470, 1475-76 (10th Cir. 1992) (same), *with Friend v. Kolodzieczak*, 72 F.3d 1386, 1391 (9th Cir. 1995) (holding that interest is calculated from the date of judgment unconditionally entitling the prevailing party to attorney fees); *Bank Atlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1052-53 (11th Cir. 1994) (same); *Jenkins v. State of Missouri*, 931 F.2d 1273, 1275 (8th Cir. 1991) (same); *Mathis v. Spears*, 857 F.2d 749 (Fed. Cir. 1988) (same); *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 543 (5th Cir. 1983) (en banc) (same).

1. ***Kaiser Aluminum & Chem. Corp. v. Bonjorno***

Because of the state's and the Third and Tenth Circuits' reliance on the Supreme Court's decision in *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990),[2] we start our discussion with that case.  In *Bonjorno*, the Supreme Court considered two issues relevant for our purposes, neither of which, however, involved the timing of

---

[2] In *Bonjorno*, the plaintiff brought a federal antitrust suit against the defendant.  494 U.S. at 829.  In the first trial, the district court entered a directed verdict for the defendant.  The Third Circuit reversed and remanded for a new trial.  *See id.*  In the second trial, the jury found in favor of the plaintiff in an amount exceeding $5 million, and judgment was entered on August 22, 1979.  *See id.* at 830. The district court found the jury's damage award unsupported by the evidence and ordered a new trial on the issue of damages.  *See id.*  After a third trial, the jury returned an award for the plaintiff of over $9.5 million in damages, and the district court entered judgment on the award on December 4, 1981.  *See id.* Thereafter, the district court granted the defendant's motion for judgment notwithstanding the verdict.  *See id.*  The plaintiff appealed, and the Third Circuit reversed and reinstated and affirmed the December 4, 1981 judgment.  *See id.*  The district court subsequently held that § 1961 required interest on damages to be calculated from December 2, 1981, the date of the second jury verdict, and the Third Circuit affirmed.  *See id.* at 832.

ascertained."  *Coal Res., Inc. v. Gulf & W. Ind.*, 954 F.2d 1263, 1276 (6th Cir. 1992).

We note that several of our sister circuits have concluded that *Bonjorno* does not dictate the results reached in *MidAmerica* and *Eaves*.  *See, e.g., Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331-32 (5th Cir. 1995) (holding that *Bonjorno* did not overrule Circuit precedent that post-judgment interest accrues from the date of the judgment establishing the right to attorney fees); *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1052 (11th Cir. 1994) (finding support in *Bonjorno* for its conclusion that costs accrue interest from the date of the merits judgment that included an award of unquantified costs); *Jenkins v. State of Missouri*, 931 F.2d 1273, 1276 n.3 (8th Cir. 1991) (concluding that interest accrues from the judgment establishing a party's unconditional right to attorney fees, and rejecting a claim that *Bonjorno* dictated a different result).

Despite the state's assertions to the contrary, *Bonjorno* and this Court's cases interpreting § 1961 do not "dictate" the result it is seeking.  This Circuit has taken a common-sense approach when applying § 1961 in different contexts after *Bonjorno*.  We have refused to narrowly construe this provision, but rather have resolved interpretation issues with due regard to equitable considerations where relevant.  While we have remained faithful to the Supreme Court's dictates in *Bonjorno*, we have also ensured that the purpose of § 1961 is served.  "We have applied *Kaiser* to hold that post-judgment interest runs from the date of the judgment that is not entirely set aside."  *Skalka,* 178 F.3d at 429 (holding that plaintiffs are entitled to post-judgment interest from the date of entry of an initial, partial unappealable judgment, rather than the final, appealable judgment disposing of all claims); *see also Adkins v. Asbestos Corp.,* 18 F.3d 1349 (6th Cir. 1994) (holding that post-judgment interest properly runs from the date of judgment after remand, rather than vacated judgment); *Coal Res.*, 954 F.2d at 1273-75 (holding that post-judgment interest properly accrues from the date of the initial district court

comports with the Supreme Court's requirement that damages be ascertained in a meaningful way prior to accruing interest. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331-32 (5th Cir. 1995); *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1052 (11th Cir. 1994).

We note that the state has attempted to blur the line between the Supreme Court's discussion of the issues it addressed in *Bonjorno*. The Supreme Court's discussion regarding the § 1961 requirement that damages be ascertained in a meaningful way before accruing interest was part of its resolution of the issue of whether interest accrues on a vacated damages judgment, not, as the state represents,[7] as part of its resolution of the issue of whether interest accrues on a verdict or judgment. Even a cursory glance of the Supreme Court's *Bonjorno* opinion would make clear that this is an inaccurate and misleading representation of that Court's discussion.

The distinction is important, we believe, because it makes clear that the Supreme Court was not stating that "meaningfully ascertained" means a sum certain in the context of an award of attorney fees. The Court simply did not indicate that we must read into § 1961 a requirement that an award of attorney fees as part of a final judgment on the merits must first be quantified prior to accruing interest. When a judgment is vacated it is legally void and unenforceable. A judgment, which has not been vacated or reversed, and which unconditionally awards reasonable attorney fees, is a valid and enforceable "money judgment." As such, reasonable attorney fees are "sufficiently

---

[7] The state asserts "the United States Supreme Court considered whether interest ran from a jury verdict awarding damages or from the date the court entered judgment on the verdict. The Court held that interest ran from the date of the court's judgment, not the date of the verdict *because the monetary damages were not meaningfully ascertained until the final judgment.*" Appellants' Br. at 6 (emphasis added; citations omitted).

interest accrual on an attorney fee award. First, the Court addressed the issue of whether, pursuant to § 1961(a), interest on damages should be calculated from the date of verdict or the date of the judgment. *See id*. at 834-35. At that time, there was a circuit split on the issue. *See id*. at 834. Those courts that held interest accrued from the verdict based their decisions on "the policy underlying the postjudgment interest statute--compensation of the plaintiff for loss of the use of the money . . . ." *Id*. The Court concluded, however, that the plain language of § 1961, and the absence of legislative intent to the contrary, required that post-judgment interest run from the date of the entry of judgment rather than the date of verdict. *See id*. at 835.

The second issue the Court addressed was whether interest on damages should be calculated from the date of a judgment that was subsequently vacated as it was unsupported by the evidence. *See id*. at 835-36. The Court's discussion of this issue was brief. First, the Court recognized that "the purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment of the defendant." *Id*. at 835-36 (quoting *Poleto v. Consol. Rail Corp.*, 826 F.2d 1270, 1280 (3d Cir. 1987). Next, the Court noted that "[w]here the judgment on damages was not supported by the evidence, the damages have not been 'ascertained' in a meaningful way." *Id.* at 836. Finally, the Court asserted that "it would be counterintuitive . . . to believe that Congress intended postjudgment interest to be calculated from [a judgment on damages not supported by the evidence]." *Id.* at 836. Based on the foregoing, the Court concluded that post-judgment interest should not be calculated from the date of a legally insufficient judgment. *See id.*

## 2. **Third and Tenth Circuit Approach**

Two of our sister circuits have concluded that interest on an attorney fee award accrues from the judgment quantifying the award.[3]  *See Eaves v. County of Cape May*, 239 F.3d 527, 532

---

[3]The state asserts that "[t]he Seventh, Eighth, Ninth and Tenth Circuit Courts and several district courts have...*followed the reasoning* in [*Bonjorno*] and awarded interest on attorneys' fees from the date of the judgment quantifying the attorneys' fees." Appellants' Br. at 8 (emphasis added). The state's assertion is quite inaccurate.

First, the state cites eight cases for this proposition, but only three of the eight post-dated the Supreme Court's *Bonjorno* decision. Of the three cases which post-date *Bonjorno*, only two mention that decision, and both of these cases are from the same court. *See Joseph Mfg. Co. v. Olympic Fire Co.*, 986 F.2d 413, 416 (10th Cir. 1993) (discussing interest on costs); *MidAmerica*, 962 F.2d at 1475 (discussing interest on fees). Of the two cases that mention *Bonjorno*, only one addresses the issue of attorney fees.

Second, the Eighth and Ninth Circuits have concluded that an award of attorney fees accrues interest from the date of the judgment that unconditionally entitles the prevailing party to such fees, regardless of when the fees are quantified. *See Friend v. Kolodzieczak*, 72 F.3d 1386, 1392 (9th Cir. 1995); *Jenkins v. State of Missouri*, 931 F.2d 1273, 1276-77 (8th Cir. 1991). The Ninth Circuit case cited by the state, *Perkins v. Standard Oil Co.*, 487 F.2d 672, 675 (9th Cir.1973), held that interest on attorney fees does not run from the date of the prevailing party's *claim* for fees. In that case, the court held that the victor was entitled to fees and quantified those fees as part of a single judgment. *Id.* at 673. In the Eighth Circuit case cited by the state, *R.W.T. v. Dalton*, 712, F.2d 1225, (8th Cir. 1983), it is not clear that the plaintiffs sought interest from the date of summary judgment in their favor. It is clear, however, that the law of the Eighth Circuit is other than what the state suggests.

Third, the two Seventh Circuit cases and one of the district court cases cited by the state do not address the issue presented here. *See Fleming v. County of Kane*, 898 F.2d 553, 565 (7th Cir. 1990) (addressing whether the district court erred in ordering that interest run "from a date 30 days after the end of the month in which the services were rendered"); *In re Burlingon Northern, Inc.*, 810 F.2d 601, 608-09 (7th Cir. 1986) (addressing whether interest ran from consent decree or final judgment); *McCullough v. Cady*, 640 F. Supp. 1012, 1019-20 (E.D. Mich. 1986) (awarding and quantifying fees in single judgment).

In sum, only one case, the Tenth Circuit's *MidAmerica* case, has "followed the reasoning in [*Bonjorno*] and awarded interest on attorneys'

---

verdict, the Third Circuit concluded that a party is not entitled to interest on an attorney fee award until that award is quantified and entered as part of a judgment. *See id*. The court relied to a large extent for this proposition, not on the Supreme Court's decision, but rather on its own decision, subsequently reversed, in that same case. *See id*. at 537-38 (referring to *Bonjorno v. Kaiser Aluminum & Chem. Co.*, 752 F.2d 802, 815 (3d Cir. 1984)). Once again we note that the Supreme Court based its conclusion that interest did not run from a verdict on the plain language of § 1961(a), which states that "interest shall be calculated from the date of the entry of the *judgment*." 28 U.S.C. § 1961(a) (emphasis added).

The *MidAmerica* court similarly asserted that the Supreme Court's decision in *Bonjorno* dictated the result it reached. The court stated that the rule that post-judgment interest on attorney fees does not accrue until such fees are quantified was "consistent with the [*Bonjorno*] requirement that interest on any type of damages should not accrue until the damages are 'meaningfully ascertained.' " *Id*. at 1476-77 (quoting *Bonjorno*, 494 U.S. at 836)). The *MidAmerica* court apparently interpreted the Supreme Court's requirement that damages be ascertained in a meaningful way as a requirement that such damages be reduced to a sum certain. This interpretation overlooks the context of the Supreme Court's application of that rule. The Supreme Court's statement that damages must be ascertained in a meaningful way was made in the context of its discussion of whether, pursuant to § 1961, post-judgment interest runs from the date of a vacated judgment that was unsupported by the evidence. We do not dispute that a judgment that is subsequently set aside is not ascertained in a meaningful way. *See, e.g., Skalka v. Fernald Envtl. Restoration Mgmt. Corp*, 178 F.3d 414, 429 (6th Cir. 1999) (stating that "post-judgment interest runs from the date of any judgment that is not entirely set aside). But here, in contrast, we are dealing with a valid, final judgment awarding reasonable attorney fees. We believe that the rule permitting interest to run from the initial judgment awarding such fees

Cir. 1990)).  The court did not, however, articulate why this "traditional notion" should apply in the context of an award of reasonable attorney fees.  We note also that the Seventh Circuit case relied on by the *MidAmerica* court does not support its contention that there is such a "traditional notion."

We respectfully decline to accept the Third and Tenth Circuits' assertions that, in the context of an award of attorney fees, the term "money judgment" is "commonly understood" to require an award of a fixed sum to the prevailing party. Rather, our review of the cases addressing this issue demonstrates a general rule that a judgment that unconditionally entitles a party to reasonable attorney fees is the "money judgment" contemplated by § 1961.  *See, e.g., Friend v. Kolodzieczak*, 72 F.3d 1386, 1391 (9th Cir. 1995) (interpreting § 1961 in the context of an attorney fee award); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331-32 (5th Cir. 1995) (same); *Bank Atlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1052-53 (11th Cir. 1994) (same); *Jenkins v. State of Missouri*, 931 F.2d 1273, 1275 (8th Cir. 1991) (same); *Mathis v. Spears*, 857 F.2d 749 (Fed. Cir. 1988) (same); *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 543 (5th Cir. 1983) (en banc) (same).  We note that those few courts that hold a "money judgment" does not include a judgment awarding reasonable attorney fees do not offer any benefit for this narrow reading of § 1961, and we can see no benefit to reading in the quantification of fees requirement.

b.     *Application of Kaiser Aluminum & Chemical Corp. v. Bonjorno*

The Third Circuit in *Eaves* also stated that its decision was "dictated" by the Supreme Court's decision in *Bonjorno*.  239 F.3d at 539.  The *Eaves* court suggested that a district court judgment awarding reasonable attorney fees "is the functional equivalent of the . . . unliquidated liability verdict" in *Bonjorno*.  *Id*. at 538.  Noting that the Supreme Court rejected the argument that interest should run from the date of the

(3d Cir. 2001); *MidAmerica Federal Sav. & Loan Assoc. v. Shearson/American Express, Inc.*, 962 F.2d 1470, 1476-77 (10th Cir. 1992).   These courts assert essentially two interrelated bases for their decision. First, they hold that post-judgment interest accrues, pursuant to § 1961, only on a sum certain.  *See Eaves*, 239 F.3d at 532-35; *MidAmerica*, 962 F.2d at 1477.  Second, they suggest that the Supreme Court's decision in *Borjorno* "dictates" the conclusion that post-judgment interest accrues only from a sum certain.  *See Eaves*, 239 F.3d at 535-38; *MidAmerica*, 962 F.2d at 476. We address each of these conclusions in turn.

a.  *Sum Certain*

In *Eaves v. County of Cape May*, the Third Circuit concluded that, pursuant to §1961(a), post-judgment interest on an attorney fee award runs from the date that the district court entered judgment quantifying the award, rather than the date the court enters a judgment that awards reasonable attorney fees.   239 F.3d at 542.[4]   The *Eaves* court's interpretation of the § 1961(a) term "money judgment" led it to conclude that a "money judgment" "must be comprised of 'a *definite* and *certain* designation of the amount   which plaintiff is owed by defendant.' "  *Id*. at 535 (quoting *Penn Terra LTD v. Department of Envtl. Res.*, 733 F.2d 267, 275 (3d Cir. 1984) (emphasis in original).

The *Eaves* court based its conclusion regarding the proper interpretation of § 1961's "money judgment" term on that court's prior interpretation of the term "enforcement of a money judgment" found within the former 11 U.S.C.

---

fees from the date of the judgment quantifying the attorneys' fees."

[4] We note that the Third Circuit delivered its decision in *Eaves* after oral argument in this case.  The state provided this Court with the decision as supplemental authority pursuant to Fed. R. App. P. 28(j).

§ 362(b)(5) of the Bankruptcy Code.[5]  *See id*.  The *Eaves* court adopted its unsupported statement in *Penn Terra* that a "money judgment" need only consist of two elements, one of which is "a definite and certain designation of the amount which plaintiff is owed by defendant." *Id*. at 535 (quoting *Penn Terra*, 239 F.3d at 275).  Accordingly, the *Eaves* court suggested that it was "constrained to agree with the [defendant] that § 1961(a) simply does not permit post-judgment interest on an attorney's fee award to run from the date that the court initially determines that the prevailing party is entitled to an award if the amount was not also quantified and included in that judgment." *Id*. at 534-35.

We are admittedly puzzled by the Third Circuit's reliance on its *Penn Terra* decision when construing the term "money judgment" in § 1961(a).  In *Penn Terra*, the court was required to determine whether an action was an "attempt to enforce a money judgment," and thus an "exception to the exception" to the automatic stay provision, 11 U.S.C. § 362(a).  733 F.2d at 272.  The court noted that the provision "should be construed *narrowly* so as to leave to the States as much of their police power as a fair reading of the statute allows."  *Id*. at 273 (emphasis in original).  The court suggested a second reason to construe the term narrowly so as

to give the states sufficient latitude in bringing actions that generally should not be stayed "for reasons of either policy or practicality."  *Id*.  Therefore, we question the propriety of looking to *Penn Terra* for guidance in construing the "any money judgment" term of § 1961(a) in this context.  Moreover, the *Eaves* court did not identify, in our opinion, any persuasive support for its contention that the term "money judgment" is commonly construed to require the determination of a sum certain in the context of an award of attorney fees.[6]

Like the *Eaves* court, the Tenth Circuit found that post-judgment interest on an attorney fee award runs from the date the district court entered judgment quantifying the award. *See MidAmerica*, 962 F.2d at 1476.  The court found this rule "consistent with the traditional notion that interest should not accrue on an unliquidated damage amount." *Id*. at 1477 (citing *Fleming v. County of Kane*, 898 F.2d 553, 565 (7th

---

[5] Title 11 U.S.C. § 362 is the automatic stay provision of the Bankruptcy Code.  Subsection 365(b)(5) provided an exception to the automatic stay for proceedings to enforce police and regulatory powers. At the time of the *Penn Terra* decision, § 362(b)(5) provided as follows:

> The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay under subsection (a)(2) of this section, of the enforcement of a judgment, other than a *money judgment*, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

11 U.S.C. § 362(b)(5) (emphasis added).  This provision was repealed in 1998.  *See* Pub. L. No. 105-277, Div. I, Title VI, § 603(1), Oct. 21, 1998, 112 Stat. 2681-2886 (1998).  The "money judgment" term is now part of 11 U.S.C. § 362(b)(4).

---

[6] The *Eaves* court looked at a handful of cases, none of which applied the term "money judgment" in the context of an attorney fee award. *See id*. at 533-34 (discussing *EEOC v. Gurnee Inns, Inc*., 956 F.2d 146, 149 (7th Cir. 1992) (construing the term "money judgment" in § 1961(a) to include a judgment that ordered the defendant to pay a sum of damages to the plaintiffs, less an undetermined amount representing "appropriate payroll deductions"); *Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co*., 933 F.2d 1433, 1435 (8th Cir. 1991) (interpreting § 1961(a) as it applied to judgment in favor of the plaintiff that granted supplemental relief but did not contain an amount of damages due to insufficient evidence of such damages); *In re Burlington N., Inc*., 810 F.2d 601, 609 (7th Cir.1986) (holding that plaintiffs could not recover post-judgment interest from date district court approved consent decree, since there was no judgment entered at that time); *In re Commonwealth Oil Ref. Co*., 805 F.2d 1175, 1186 (5th Cir. 1986) (following *Penn Terra's* interpretation of 11 U.S.C. § 362(b)(5)); *In re Valencia*, 213 B.R. 594, 596 (D. Colo. 1997) (quoting *in re Devitt*, 126 B.R. 212, 215 (Bankr. D.Md. 1991)); *In re Dow Corning Corp*., 237 B.R. 380, 386 (Bankr. E.D. Mich. 1999) (applying *Penn Terra's* definition of "money judgment"); *In re Devitt*, 126 B.R. at 215 (stating that a bankruptcy court has jurisdiction to determine dischargeability of a debt and to "render a money judgment in an amount certain without the assistance of a jury")).